CARMEN REYES, demandante y apelada, *v.* JOSÉ MARÍA ALVAREZ y su esposa DOÑA CATALINA REUS, demandados y apelantes.

No. 4584.—*Sometido:* Febrero 5, 1929. *Resuelto:* Mayo 9, 1929.

*Felix Santoni*, abogado de los apelantes; *Luis Mercader*, abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR TEXIDOR, emitió la opinión del tribunal.

Los hechos en este caso, por lo que resulta de las alegaciones, prueba y sentencia, son:

Carmen Reyes, es dueña de una finca urbana, la marcada con el número 14 de la acera norte de la calle de Cristóbal Colón, en Arecibo; la casa es de mampostería, de una sola planta, y la construcción ocupa por completo el solar en que está enclavada; por el este colinda con otra casa de los aquí demandados y apelantes, la que primitivamente se hallaba construida, en madera los altos, y en mampostería los bajos, y que tenía a su lado oeste un callejón que la separaba de la finca de la demandante. La casa de los demandados fué demolida por sus dueños, para construirla en concreto o cemento armado, en el año 1925; para tal obra de reconstrucción los demandados eliminaron el callejón a su lado oeste, y entablaron negociaciones con la demandante, para que ésta les permitiera utilizar la pared saliente, este, de su casa, para levantar su pared y construcción, dando a la demandante el derecho a utilizar la pared que ellos fabricaban, en el caso de que ella quisiera levantar altos a su casa terrera; ésta tenía siempre ventanas y huecos abiertos en esa parte este. Los demandados fabricaron la nueva casa, de cemento armado; y para ello construyeron en la parte oeste del edificio, y adheridas a la pared este de la casa de la demandante unas columnas, sobre las que descansa una pieza, de

concreto, a ras de la pared, y tapiando la construcción las ventanas y huecos que había en esa pared, que es la que queda sirviendo de tal a la primera planta de la casa de los demandados; éstos en el tercer piso de la casa que construyeron, abrieron varios huecos en forma de ventanas, si bien cubiertas por vidrios jaspeados, de diversos colores, y al abrirlos, lo hicieron sin el consentimiento de la demandante. Esta, pidió a la corte que por sentencia ordenara a los demandados que cierren los huecos o ventanas que tienen abiertos en la pared. Los demandados, en su contestación, se opusieron a la petición de la demandante, alegando que las ventanas y huecos que en la casa de la demandante existieron, dando sobre el callejón de los demandados, se habían abierto sin permiso de éstos, y que si los muros de la nueva casa se adhieren a la pared de la de la demandante, esto se ha hecho a petición del apoderado de dicha señora, y en mejora de esa pared.

Se llevó el pleito a juicio, se oyó la prueba, y se practicó la de inspección ocular, de la que se levantó acta, que es parte del récord, y que se copia en la opinión en el caso; proceder que es el más discreto y acertado por parte del juez, y que desgraciadamente no se sigue con frecuencia. De esa inspección ocular aparece que los huecos y ventanas de la casa de la demandante han quedado cerrados o cubiertos por la construcción de los demandados, en lo que se refiere a la parte este de aquella casa; que en la parte oeste del tercer piso de la casa de los demandados hay varios huecos o vacíos de cuatro y medio pies de ancho por tres de alto, más o menos, con marco fijo e inamovible de madera, y cubiertos o cerrados por vidrieras compuestas de cuadros irregulares de vidrio jaspeado, a cuyo través no puede verse a pesar de la luz del día; y que la pared que forma la colindancia oeste de la casa de los demandados, es una de ladrillo y mezcla que forma parte de la casa de la demandante, "y está habilitada como pared medianera" (dice la diligencia); y se vieron las columnas de hormigón, y la viga sobre ellas a ras de la pared de ladrillo de la demandante.

La corte dictó sentencia declarando con lugar la demanda, con las costas a los demandados; y de esta sentencia se ha apelado.

La parte apelante señala ocho errores; los que aparecen bajo los números 1, 2, 3 y 5, se refieren a la apreciación de la prueba en cuanto a la existencia de un convenio entre la demandante y los demandados, para que éstos pudieran utilizar como medianera la pared de la demandante, y ésta en su caso aprovechar la que los demandados hicieran; y en cuanto a que la pared levantada por los demandados sea medianera; y en cuanto al consentimiento de doña Catalina Reus para que su esposo Alvarez gravara con servidumbre de medianería la casa que reconstruyó. Se señala como error la estimación por la corte de la existencia de medianería, confundiéndola con el derecho de arrimo; la declaración de que la pared en el tercer piso de la casa de los demandados es medianera; la orden de cerrar los huecos; y la imposición de las costas.

En la "opinión" de la corte que es base de la sentencia, se trata con cuidadoso detenimiento el extremo de la existencia de pared medianera, y la consiguiente servidumbre. Lleva a la corte a tal estudio la consideración del precepto legal contenido en el artículo 587 del Código Civil, en el que se prohibe a los medianeros abrir, sin consentimiento de los otros, en pared medianera, ventanas o huecos.

Realmente, la cuestión de existencia de medianería, entraña una aparente dificultad en su solución. Un tratadista eminente, el Sr. Sánchez Román, sostiene que la medianería tiene más de copropiedad que de servidumbre, y así la califica como "la copropiedad de una pared o cerca situada en el linde de dos heredades contiguas," dándole el carácter de una comunidad especial. A este propósito, en su obra "Derecho Civil," tomo 3, pág. 494, dice el referido autor:

"Lo que produce el estado de medianería es la inmediata contigüidad y unión de las dos paredes o muros medianeros, que vienen materialmente a formar uno, y el derecho o uso que sobre cada una

de las partes respectivas de la misma pared tienen los dos media-
neros para levantar su edificación, que parte de una base común
prestándose apoyo o resguardo y solidez mutuos.''

Concuerda con esta opinión la de otro eminente trata-
dista, el Sr. Manresa, que en las páginas 762 y 763 del tomo
IV de su obra Comentarios al Código Civil Español, ha
dicho:

"*La medianería ¿es una servidumbre?*—En rigor, la medianería
es una comunidad de bienes, una copropiedad, pero de carácter espe-
cial.  Laurent la define: 'la copropiedad, por proporciones indivisas,
de un muro, de un foso, o de un seto, que sirve de separación o de
límite a dos heredades contiguas . . . la medianería constituye una
comunidad con indivisión forzosa.'

"  *       *       *       *       *       *       *

"Para explicarse jurídicamente el aspecto por el cual la media-
nería tiene algo de servidumbre—gravamen en cosa ajena en beneficio
de un fundo—nada mejor que analizar concretamente la relación que
supone.  El muro medianero no es *mío* por entero; *es de otro y
mío*—copropiedad;—pero ni el uno ni el otro podemos servirnos de
él, para ciertos usos sobre todo, sino de un modo *completo;* todo el
muro, en su integridad física sirve a los usos de los copropietarios—
copropiedad indivisa—; ahora bien; la indivisión del muro, y el uso
de todo él por cada propietario, determinan el beneficio de quien lo
usa, beneficio que se traduce en un gravamen que carga al otro pro-
pietario del muro; hay ciertos usos constantes en que esta relación
no parece tan clara; pero hay otros que, por su carácter determi-
nado y específico, entrañan semejante relación perfectamente defi-
nida, ofreciendo bien a las claras motivos que justifican el proceder
del legislador español.''

Comentando M. Scaveola este mismo punto ha dicho:

"El derecho de medianería tiene más apariencias legales de un
caso de comunidad de bienes que de servidumbre, aunque reconoz-
camos en él ciertas anormalidades que no convienen con determinados
caracteres de aquella institución.''  Comentarios al Código Civil, tomo
10, pág. 425.

Y en la jurisprudencia española, aunque un tanto vaci-
lante en un principio, vino a consagrar en definitiva esa doc-
trina la sentencia del Tribunal Supremo de España de 16

de marzo de 1888, anterior al código como se ve, y en la que se declaró que la pared divisoria de dos fincas urbanas es del dominio común de los propietarios colindantes, cada uno de los cuales tiene, por consiguiente, el derecho de que sirva de cerramiento a la finca en toda la altura que le convenga darla, mientras lo permitan las ordenanzas municipales.

La jurisprudencia de los Estados Unidos, no es uniforme, en cuanto a lo que es un *party wall,* o pared medianera. En algunos casos se ha declarado que si dos personas tienen una pared medianera, que en la mitad de su espesor ocupa terreno de cada una de esas personas, éstas no son "tenants in common of the wall or the land on which it stands" (Matts v. Hawkins, 5 Taunt 20). En Bouvier lo encontramos definido como "muro erigido en la línea entre dos propiedades contiguas pertenecientes a distintos dueños, y para el uso de ambas propiedades." 2 Bouvier's Law Dictionary. En un caso en Illinois, Field v. Leiter, 118 Ill. 17) se definió como estructura para el común beneficio y conveniencia de las propiedades que separa, y permitir a las dos partes hacer uso de él.

En el caso *Lederer* v. *Colonial Ins. Co.,* 130 Iowa, 157, 106 N. W. 357, se dió a los términos "party wall," y "wall in common" un significado igual, y un uso sinónimo en las leyes y estatutos.

En *Marx Weill* v. *Baker, Sloo & Co.,* 39 La. Ann. 1101, encontramos:

"No existe división alguna en el dominio de una pared medianera; ella pertenece en su totalidad en común proindiviso a los condueños vecinos, independientemente de la línea divisoria entre los solares contiguos."

Parece haber una contradicción entre la doctrina sentada por el Tribunal Supremo de España en la sentencia a que antes nos hemos referido, de 16 de marzo de 1888, y otra de 12 de enero de 1906, en la que se ha dicho lo que sigue:

"Considerando que aun cuando sea indudable, y además esté reconocido que la pared de que se ha tratado en el actual pleito no

es medianera, sino propia exclusivamente de los hermanos Rosal, esto no obsta para que sobre ella pueda establecerse la servidumbre legal de la medianería, a tenor de lo efectuado en el art. 171 de las Ordenanzas municipales de Oviedo, en relación con el art. 571 del Código Civil, por no existir en este cuerpo legal ningún otro precepto que se oponga a tal servidumbre, sobre la base y reconocimiento previo de la propiedad exclusiva de la pared divisoria en favor de quien, por verdadera expropiación, tenga que sufrir en adelante tal servidumbre, siendo de estimar las infracciones del motivo tercero en cuanto la Audiencia de Oviedo rechaza en absoluto derecho que por reconvención ha reclamado en el pleito don Policarpo Herrero, aun cuando deberá reconocerse únicamente para cuando llegue el momento en que éste proceda a la construcción de edificio contiguo que haga necesaria dicha servidumbre, ya que el referido precepto de las Ordenanzas no autoriza para entender que cualquier momento, y antes que llegue el inmediato de edificar, pueda desposeer con tal precepto de la propiedad exclusiva, para ningún otro efecto, de la pared divisoria a quien es dueño único de ella.''

La contradicción es solamente aparente. En este último caso es indudable la existencia de una ordenanza municipal que en su artículo 171 da al que pretenda construir arrimado a pared contigua, el derecho a adquirir la medianería en todo o en parte, pagando la mitad del valor del muro y la mitad del terreno en que descansa (Véase la sentencia citada, y especialmente la página 95 del tomo 103, Jurisprudencia Civil); y con arreglo al Código Civil Español la servidumbre de medianería se rige por las disposiciones del mismo código y por las ordenanzas y usos locales que no estén en conflicto con el código. De forma que esas ordenanzas de Oviedo tenían en el caso la fuerza de una ley.

En materia de servidumbre de medianería encontramos que en nuestro Código Civil se da una inusitada fuerza a las presunciones. El artículo 579 del citado cuerpo legal, dice así:

''Artículo 579.—Se presume la servidumbre de medianería mientras no haya un título o signo exterior, o prueba en contrario:

''1. En las paredes divisorias de los edificios contiguos hasta el punto común de elevación.

"2. En las paredes divisorias de los jardines o corrales sitos en poblado o en el campo.

"3. En las cercas, vallados y setos vivos que dividen los predios rústicos."

Nótase la forma en que se establece la presunción: "mientras no haya signo exterior, o prueba en contrario." El signo exterior, es por decirlo así, la más fuerte presunción. Y se entiende que existe, en los distintos casos que se citan en el artículo 580 del mismo código, entre los que merecen especial atención para este litigio, los siguientes:

"3. Cuando resulte construida toda la pared sobre el terreno de una de las fincas, y no por mitad entre una y otra de las dos contiguas.

"4. Cuando sufra las cargas de carreras, pisos y armaduras de una de las fincas y no de la contigua."

Creemos que de la prueba en este caso no aparece que los demandados hayan construido pared sobre el terreno de las dos fincas, y por mitad, ni que la pared de la casa de la demandante sufra la carga de carreras, pisos y armaduras de la de los demandados. Este es el resultado de un examen de la diligencia de inspección ocular practicada por el juez (Véanse páginas 16, 17, 24 y 25, de la transcripción del récord). Pero es el hecho positivo que la pared de la casa de la demandante, en el lado este, queda en una situación como de pared oeste de la casa de los demandantes en el piso bajo. Si sobre esa pared, y descansando en ella, se levantara la de los pisos superiores, creeríamos en la existencia de una verdadera medianería. Pero de lo que de los autos aparece, no podemos llegar a esa conclusión. Se ha convenido entre los propietarios colindantes en un derecho especial, que llama una de las partes *de arrimo,* y en que en el futuro, en el caso de que la demandante quiera levantar algún piso más a su casa, pueda utilizar como pared la de la casa de los demandados. Pero, en vez de encontrar en los hechos prácticos en el caso los elementos de la medianería, encontramos los signos exteriores contrarios a la misma, en su estricto sentido.

■ A lo que en realidad queda reducida la cuestión es a la negación de una servidumbre de luces y vistas; cuestión que la demanda en el caso presenta con absoluta claridad, y con completa concreción. La demanda va dirigida a lo que se dice en la súplica:

"En tal virtud solicito de la corte dicte sentencia ordenando a los demandados que cierren los huecos o ventanas que tienen abiertos en la susodicha pared. . . ."

No cabe expresar con mayor claridad la aspiración de un demandante.

¿Tienen los demandados el derecho de abrir en la pared de su casa que da sobre la finca de la demandante los huecos o ventanas que abrieron? Evidentemente, no.

Si la pared fuese medianera, es indudable que su dueño no podría abrir en ella huecos o ventanas, sin que por ello se estableciera un signo contrario a la servidumbre, lo que sería un verdadero contrasentido. Véase a este fin el número 1°. del artículo 580, Código Civil, que declara la existencia de huecos o ventanas abiertas en la pared divisoria como signo exterior contrario a la servidumbre.

Si la pared es medianera, no pueden los demandados usar de ella en el sentido de abrir huecos o ventanas, aun temporalmente, más que con el previo consentimiento de la demandante; lo que no se ha probado en este caso.

Y no siendo medianera la pared, el régimen del caso sería el artículo 588 del Código Civil, cuyo texto es como sigue:

"Artículo 588.—El dueño de una pared no medianera, contigua a finca ajena, puede abrir en ella ventana o huecos para recibir luces a la altura de las carreras, o inmediatos a los techos, y de las dimensiones de 30 centímetros en cuadro, y en todo caso, con reja de hierro remetida en la pared y con red de alambre.

"Sin embargo, el dueño de la finca o propiedad contigua a la pared en que estuvieren abiertos los huecos podrá cerrarlos si adquiere la medianería y no se hubiera pactado lo contrario.

"También podrá cubrirlos edificando en su terreno o levantando pared contigua a la que tenga dicho hueco o ventana.

"Artículo 589.—No se puede abrir ventanas con vistas rectas, ni

balcones u otros voladizos semejantes sobre la finca del vecino, si no hay dos metros de distancia entre la pared en que se construyan y dicha propiedad.

"Tampoco pueden tenerse vistas de costado u oblicuas sobre la misma propiedad, si no hay 60 centímetros de distancia."

`La jurisprudencia de Puerto Rico en esta materia se halla principalmente en los casos siguientes:

*García* v. *García,* 25 D.P.R. 128, en la que se citan numerosas sentencias del Tribunal Supremo de España, y en la que se declara que si la ley ha prescrito que sólo pueden abrirse ventanas con vistas rectas a dos metros de distancia de la colindancia de la propiedad ajena, ha reconocido al dueño de esta propiedad el derecho de exigir ante los tribunales el cumplimiento de tales preceptos. La opinión en este caso examina y pesa los preceptos legales anteriores al código, y los de éste; y la jurisprudencia en cuanto a unos y otras.

El caso de *Brown* v. *Vargas y esposa,* 36 D.P.R. 563. En este caso se decidió que unos huecos en pared de concreto estaban suficientemente tapiados con madera. El párrafo de la opinión que deseamos citar es éste:

"La cuestión a resolver quedó reducida a si los huecos abiertos en la pared de concreto debieron haber sido cerrados con el mismo material que fué construida, o si fué suficiente haberlo hecho con material de madera. Los apelantes insisten en el primer extremo, pero no citan autoridades ni su ligera argumentación ha podido convencernos. Si bien la mayor duración del concreto es cuestión por demás supuesta, es también admitido que el material de madera usado para construcciones desde los tiempos primitivos no puede decirse que está en desuso en virtud de las modernas construcciones de concreto. Por el contrario, en estas construcciones no se prescinde del maderamen para puertas, ventanas, etc., que son los medios para incomunicar y cerrar las mismas. Así es que habiéndose tapiado con madera herméticamente los huecos del muro, se ha cumplido por de pronto con la ley. Si en el transcurso del tiempo, factor que al fin y a la postre lo demuele todo, la madera llega a su término y se destruye o se quita de los huecos, el derecho de los demandantes o de

sus causahabientes subsiste y ellos pueden hacerlo valer en cualquier tiempo. Entre tanto, no estando prohibidas las construcciones de madera, los demandados están cumpliendo con la ley.''

Tiene una gran importancia la frase ''habiéndose tapiado con madera *herméticamente*'' (subrayado nuestro).

El caso *Arabía de Goyco* v. *Armstrong,* 37 D.P.R. 170, en el que se dijo:

''La misma parte demandada comprendió que no podía conservar su terraza enteramente como tal, esto es, abierta al lado que da al solar de los demandantes, y sobre la pared de cemento levantó otra de madera dejando los huecos que se describen en la inspección. Parece que quiso colocarse dentro de la regla establecida en el caso de Vallecillo, *supra.*

''¿Se colocó? No, a nuestro juicio. En el caso de Vallecillo se construyó una pared de cemento armado independiente, alta, en la línea divisoria de los solares, y esta corte dijo: hecho esto, nada importa lo que el dueño del solar haga en el interior del mismo. Aquí se elevó la pared pero en ella se dejaron ciertos huecos cuya naturaleza es necesario investigar.

''La terraza como tal, esto es, considerada como balcón o voladizo semejante, hemos visto que no pudo construirse como se construyó no sólo más allá del límite de los dos metros fijados por la ley, sino extendiéndose hasta llegar a la misma colindancia.

''Si se estimara que a virtud de haberse elevado el muro de la colindancia, la terraza dejó de serlo en cuanto a los demandantes, entonces surge la siguiente cuestión: ¿pueden o no calificarse como ventanas los huecos que existen así en la planta baja como en la alta de la construcción?

''*Ventana* como dice la academia es la 'abertura más o menos elevada sobre el suelo que se deja en una pared para dar luz y ventilación.' También se llama ventana 'a la hoja u hojas de madera con que se cierra.'

''Por más que hay que reconocer que no se trata de ventanas comunes con sus hojas de abrir y cerrar, no es posible dejar de concluir que ventanas son por donde entran la luz y el aire las que existen en las dos plantas de la construcción de que se trata en este caso.''

La alegación más fuerte en el caso que decidimos es la de que las ventanas se hallan cubiertas por vidrios jaspeados. No es esto lo mismo que en el caso *Brown* v. *Vargas,*

*supra,* en el que los huecos quedaron *herméticamente* cerrados. En el caso que resolvemos la existencia de los vidrios, materia tan fácil a la rotura y desaparición, y materia que filtra la luz, no es la misma garantía. Los huecos quedan en la realidad, abiertos, y no cubiertos y herméticamente cerrados.

No podemos declarar la existencia de los errores señalados por la parte apelante, salvo que en la "Opinión" de la corte de distrito se habla de una medianería que no creemos se probó; pero esto no sería motivo de revocación, ya que la cuestión en cuanto a luces y vistas está bien resuelta.

*Debe confirmarse la sentencia apelada.*