LEOPOLDO MONCLOVA MARTÍNEZ, demandante y apelante, *v.* JOSÉ MARÍA BLANCO, demandado y apelado.

No. 4210.—*Sometido:* Diciembre 6, 1928. *Resuelto:* Diciembre 16, 1929.

---

* Véase el prefacio.

*Luis Freyre Barbosa,* abogado del apelante; *Acuña & Janer,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR ALDREY, emitió la opinión del tribunal.

Leopoldo Monclova, dueño de la casa de una planta mar-

cada con el número 21 en la calle de San Sebastián, de esta ciudad, demandó a José María Blanco, dueño de la casa contigua por el este, número 19, también de una planta hasta hace poco, alegando que entre ambas existe una pared medianera y que el demandado ha levantado un piso en su casa y sin el consentimiento del demandante ha construído otra pared sobre la medianería, no en la parte que a él le correspondía sino en el centro de la medianería, hacia el límite de la parte de medianería que corresponde al demandante, quedando en forma tal que los contrafuertes o columnas de la casa del demandado invaden cielo y centro de la casa del demandante, sobresaliendo del paramento este del demandante, y colocando un tubo de ventilación que fué sacado por el límite de la pared que da a la casa del demandante, de tal manera que si tratase el demandante de poner otro piso a su casa dicho tubo quedaría en el interior de la pared que haga en dicho sitio. Por estas alegaciones solicitó que se ordene al demandado que proceda a la demolición de la pared que ha levantado sobre la parte de la medianería que corresponde al demandante y que retire el tubo de ventilación mencionado.

Contestó el demandado, se celebró el juicio y dictada sentencia declarando sin lugar la demanda se interpuso este recurso de apelación en el que como primer motivo para sostenerlo se alega que la corte inferior cometió error en la apreciación de la prueba.

Como se ve por las alegaciones de la demanda su teoría es que una mitad de la pared medianera es propiedad del demandante y la otra mitad del demandado; que éste no construyó la nueva pared ''en la parte que a él correspondía, sino que la levantó del centro de la medianería hacia el límite de la parte de medianería que corresponde a este demandante''. En otras palabras, que construyó sobre la mitad correspondiente al demandante contigua a su casa, y que las columnas y el tubo de ventilación sobresalen del límite de la pared medianera por la parte del demandante e invaden cielo y centro de su casa.

Los peritos de las partes están acordes en que el muro medianero entre esas dos casas tiene 45 centímetros de espesor pero discreparon en cuanto a si la pared construída sobre él rebasa o no la línea del paramento del muro medianero en la parte que está del lado de Monclova, pues mientras el perito del demandante manifestó en su declaración que los cinco o seis estribos o columnas de la pared nueva sobresalen uno o dos centímetros por la parte de Monclova de los cuarenta y cinco que tiene la medianería y que también sobresale de ese paramento un tubo de ventilación que está adosado a la pared nueva, no a las columnas, el perito del demandado, que fué el ingeniero que construyó el nuevo piso para la casa de Blanco, declaró por el contrario que la cara interior de la pared nueva está a doce centímetros del paramento del muro medianero contiguo a Blanco quedando así un retallo o proyección sin construir de doce centímetros y que la pared nueva tiene diez centímetros de grueso por lo que su fachada externa se halla a veintitrés centímetros del paramento del muro medianero por la parte que da a Monclova y que como la mitad de cuarenta y cinco son veintidós y medio, resulta construída a menos de la mitad del eje de la pared medianera. También declaró que para garantizar la estabilidad de la pared nueva le puso varias columnas o estribos que sobresalen de dicha pared nueva siete centímetros por la parte de Monclova por lo que desde las columnas al paramento de Monclova quedan sin fabricar en los sitios de las columnas diez y seis centímetros del muro medianero; y que el tubo de ventilación adosado a la pared nueva tiene catorce centímetros de ancho, que sumados al grueso de la pared nueva y al retallo hacen treinta y seis centímetros por lo que en ese lugar quedan nueve centímetros libres de construcción por el lado de Monclova y por tanto ni las columnas ni el tubo sobrepasan el límite del muro medianero por la parte de la casa de Monclova. El juez del tribunal inferior hizo una inspección ocular que demuestra ser exacto lo que dijo el perito del demandado, pues

encontró que la pared nueva tiene diez centímetros de grueso habiendo sido empezada su construcción a doce centímetros del paramento por la parte de la casa de Blanco; que la parte más saliente de la pared nueva (que entendemos es la de las columnas) rebasa en seis centímetros la línea del eje de la pared medianera y que el tubo se destaca catorce centímetros de la pared construída por Blanco.

En vista de la prueba expuesta no podemos declarar que la corte inferior cometiera el error que se le atribuye al estimar probado por su sentencia que el demandado construyó a sus expensas la nueva pared quedando entre ella y el paramento de la pared medianera por el lado de Monclova veintitrés centímetros sin construir, diez y seis centímetros desde las columnas a dicho paramento y nueve desde el tubo de ventilación. Así pues no fué probada la alegación de la demanda respecto a que las columnas y el tubo de ventilación sobresalgan del límite de la pared medianera ocupando cielo y centro de la casa del demandante.

El segundo motivo del recurso es por no haber sido aplicado a este caso el artículo 586 del Código Civil.

Antes de considerar la aplicación del artículo citado por el apelante es necesario hacer un estudio del concepto jurídico de la medianería.

No hay controversia alguna en este caso en cuanto a que es medianera la pared que separa las casas de los litigantes, sin que se diga por qué lo es, por lo que podemos considerar los derechos que en ella tienen los dueños de los predios colindantes.

La pared medianera no ha sido ni puede ser considerada nunca como propiedad dividida y determinada de cada uno de los colindantes de modo que cada uno de ellos puede atribuirse la propiedad y dominio exclusivo de la mitad contigua a su finca. Por el contrario, la pared medianera ha sido considerada siempre como propiedad común, como una comunidad de bienes de naturaleza indivisible en la que cada condueño adquiere el dominio en todas y en cada una de sus

partes en la proporción de sus respectivas participaciones, y así lo ha declarado el Tribunal Supremo de España en su sentencia de 16 de marzo de 1888 en la que dijo: "La pared medianera divisoria de dos fincas urbanas es del dominio común de los propietarios colindantes, cada uno de los cuales tiene, por consiguiente, el derecho de que sirva de cerramiento a la finca en toda la altura que le convenga darle, mientras lo permitan las ordenanzas municipales." El Sr. Manresa en el tomo 4, pág. 738, de sus Comentarios al Código Civil Español, estudiando los derechos que surgen de una medianería dice lo siguiente: *"La medianería, ¿es una servidumbre?*—En rigor, la medianería es una comunidad de bienes, una copropiedad, pero de carácter especial. Laurent la define: 'la copropiedad, por proporciones indivisas, de un muro, de un foso o de un seto, que sirve de separación y de límite a dos heredades contiguas . . .; la medianería constituye una comunidad con *indivisión forzosa.*' La comunidad del muro, en efecto, no se entiende en el sentido de que pertenezca por mitad a cada uno de los copropietarios contiguos, de suerte que la línea media que lo divida en su ancho señale el límite de las dos propiedades. El muro común es el que, *proindiviso* en toda su extensión y espesor, pertenece igualmente a dos propietarios contiguos. Si no fuera más que esto, la medianería no pasaría de ser copropiedad; pero en la copropiedad indivisa de una cosa, ninguno de los copropietarios puede hacer nada en la misma en su exclusivo interés, pues si de tal manera obrase, invadiría la esfera del derecho de los otros, y en la medianería no hay tal limitación de la actividad jurídica de los copropietarios. Cuando la ley concede a los copropietarios de un muro común el derecho de hacer en él alguna obra en interés exclusivo de quien la hace, y no en el de los demás copropietarios, semejante concesión no puede hacerse a mero título de copropiedad, sino y al propio tiempo en virtud de un derecho de servidumbre. Para explicarse jurídicamente el aspecto por el cual la medianería tiene algo de servidumbre—gravamen en

*cosa ajena* en beneficio de *un fundo*—nada mejor que analizar concretamente la relación que supone. El muro *medianero* no es *mío* por entero, es de *otro y mío*—copropiedad;— pero ni el uno ni el otro podemos servirnos de él, para ciertos usos sobre todo, sino de un modo *completo;* todo el muro en su integridad física sirve a los usos de los copropietarios —copropiedad indivisa—; ahora bien: La indivisión del muro y el uso de todo él por cada propietario, determinan el beneficio de quien lo usa, beneficio que se traduce en un gravamen que carga al otro propietario del muro; hay ciertos usos constantes en que esta relación no parece tan clara; pero hay otros que, por su carácter determinado y específico, entrañan semejante relación perfectamente definida, ofreciendo bien a las claras motivos que justifican el proceder del legislador español.''

No es requisito esencial para la existencia de una pared medianera que haya sido construída en terrenos de ambos dueños colindantes, pues puede haber sido levantada en la propiedad de uno solo de ellos y, sin embargo, adquirirse por el dueño de la otra finca los derechos de medianería. Solamente cuando cada dueño construye su pared adosada a la pared del vecino es que cada una de esas paredes pertenece a quien la fabricó, y no existe medianería. El concepto jurídico de la medianería no fué conocido de los romanos por la manera que tenían de construir sus casas aisladas unas de las otras y vino al Código Civil español y al nuestro como consecuencia de ordenanzas municipales que lo regularon al ser construídas las casas contiguamente; y de acuerdo con tal concepto jurídico de la medianería el muro medianero que cierra dos propiedades contiguas es de ambos condueños indivisamente, y por eso el artículo 582 del Código Civil dispone que las reparaciones de las paredes medianeras se costearán por todos los condueños. Así, pues, es equivocada la teoría en que se basó la demanda respecto a que cada uno de los propietarios de las casas es dueño de la mitad de la pared medianera contigua a su fundo y que el otro no puede

levantar pared alguna en la otra mitad, pues lo contrario dispone el artículo 584 del mismo cuerpo legal al autorizar que todo propietario puede alzar la pared medianera, haciéndolo a sus expensas e indemnizando los perjuicios que se ocasionen con la obra, aunque sean temporales; y al declarar el artículo 585 que los demás propietarios que no hayan contribuído a dar más elevación a la pared, podrán, sin embargo, adquirir en ella los derechos de medianería pagando proporcionalmente el importe de la obra; precepto que holgaría si uno de los condueños no pudiera alzar toda la pared medianera sino una mitad de su espesor; tanto más cuanto que la ley dice que todo propietario podrá alzar la pared medianera, sin limitar ese derecho a la mitad de la pared contigua a él, por lo que puede levantarla en todo su espesor si le conviniere. Así se deduce de la sentencia del Tribunal Supremo de España de 16 de marzo de 1888, Jurisprudencia Civil, tomo 63, pág. 428, en un caso en que uno de los condueños de una pared medianera la derribó y la construyó de nuevo pero dándole más elevación de la que antes tenía; y habiéndose ordenado que derribase la pared en la parte que excedía de la anterior medianera dicho tribunal anuló la sentencia que tal cosa dispuso, declarando que la pared medianera es del dominio común de los propietarios colindantes y que mientras no exista servidumbre establecida en favor del predio colindante puede ser elevada dicha pared.

■■ Consecuencia de lo dicho es que cuando uno de los propietarios eleva la pared la comunidad persiste como antes en cuanto a la parte en que aquélla era y sigue siendo medianera, y que la conservación de la pared en lo que se hubiese levantado es del que la haya hecho, no siendo común sino propiedad exclusiva del que la fabricó. Véase 4 Manresa 764. Por eso el artículo 585 dice que los propietarios que no hayan contribuído a dar más elevación a la pared podrán, sin embargo, adquirir en ella los derechos de medianería pagando proporcionalmente el importe de la obra.

█ El artículo que cita el apelante como dejado de aplicar en este caso dice así:

"Art. 586.—Cada propietario de una pared medianera podrá usar de ella en proporción al derecho que tenga en la mancomunidad: podrá por lo tanto, edificar apoyando su obra en la pared medianera, introduciendo vigas hasta la mitad de su espesor, pero sin impedir el uso común y respectivo de los demás medianeros.

"Para usar el medianero de este derecho ha de obtener previamente el consentimiento de los demás interesados en la medianería; y si no lo obtuviere, se fijarán por peritos las condiciones necesarias para que la nueva obra no perjudique a los derechos de aquéllos."

Este artículo se refiere a la manera de usar los copropietarios las paredes medianeras y al derecho de edificar apoyando su obra en dicha pared medianera, o sea, haciendo descansar en ellas tirantes, maderos o carreras en todo el grueso de aquéllas o introduciendo vigas en ellas, y no tiene aplicación al caso presente en que no se trata de apoyo en la medianería sino de alzamiento de pared nueva sobre el muro medianero, lo que permite el artículo 584, *supra,* a todo propietario haciéndolo a sus expensas. Que esos dos artículos se refieren a estado de hechos distintos lo ha resuelto, aunque incidentalmente, el Tribunal Supremo de España en su sentencia de 12 de diciembre de 1908, Jurisprudencia Civil, tomo 112, pág. 938, pues habiendo sido levantada una pared sobre el muro medianero y habiéndose alegado la infracción de los artículos 577 y 579 del Código Civil español, que son iguales al 584 y 586 del nuestro, el último de los cuales requiere el consentimiento de los demás copropietarios en la medianería, lo que no exige el artículo 584, dijo lo siguiente: "La Sala sentenciadora para absolver de la demanda, en cuanto solicita el actor la demolición de la pared levantada sobre la medianería y la reconstitución de esta última, estima probado que la pared medianera puede resistir la mayor elevación que le ha dado D. Julio Cafranga, hecho que es perfectamente contrario al supuesto establecido por D. Pedro Cabal en el primer motivo de su recurso, para citar como

infringidos los artículos 577 y 579 del Código civil, y *porque aparte la diversidad de casos a que se refieren dichos dos artículos,* y de que no se trata del segundo en el actual pleito, etc." (itálicas nuestras.)

Cuanto llevamos dicho no se refiere al tubo de ventilación contiguo a la finca del demandante que el demandado colocó en la parte exterior de la nueva pared levantada sobre la medianera y cuyo tubo no puede subsistir allí porque el artículo 584 citado autoriza solamente a alzar la pared medianera y ese tubo ni es pared ni es parte integrante o necesaria de ella.

En vista de lo expuesto el demandante no debe ser condenado en las costas de la parte contraria.

*La sentencia apelada debe ser confirmada con la modificación de que el tubo de ventilación expresado debe ser quitado del sitio en que está dentro del término de dos meses, y también con la de que cada parte pague sus costas.*