ANTONIO MARTÍN ROSADO, demandante y apelante, *v.* OBDULIO CORREA, demandado y apelado.

Número 11041.

*Sometido:* 1 de febrero de 1954. *Resuelto:* 16 de febrero de 1954.

*José E. Bosch Roqué,* abogado del apelante; *José R. Fournier,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del tribunal.

Por escritura pública otorgada en el año 1949, Obdulio Correa y su esposa vendieron a Antonio Martín Rosado un solar con dos edificios de concreto armado, sito en la calle "Comerío" de Bayamón. Ese solar colinda por su fondo con otro propiedad de los mismos vendedores. Existió en este último solar un edificio de tres plantas, la primera de concreto y las otras dos de madera, que fué destruído por un incendio. Sobre el edificio comprado por Martín Rosado había construída una segunda planta de madera que estaba arrendada al Club Deportivo de Bayamón. Para llegar a esta segunda planta se utilizaba una escalera de madera que fué construída por el referido Club Deportivo. Esta escalera partía de otra de concreto que existía en el otro solar de los vendedores y al cual ya hemos hecho referencia.

Posteriormente Martín Rosado destruyó la segunda planta sobre su edificio que servía de domicilio al Club Deportivo. La escalera de maderas que conducía a dicha segunda planta también fué destruída. Habiendo los vendedores construído un edificio de concreto de tres plantas, en el solar colindante por su fondo con el de Martín Rosado, comenzaron aquéllos la construcción de una escalera de concreto para uso exclusivo del nuevo edificio, en el mismo sitio donde antes existía la escalera que también daba acceso a la desaparecida segunda planta del edificio de Martín Rosado. Requirió éste a Correa para que no continuara dicha construcción, y ante su negativa, recurrió al anterior Tribunal de Distrito, Sección de Bayamón, con una demanda de *injunction*, alegando que el demandado intenta además instalar un elevador en parte del sitio ocupado por la antigua escalera, y que esto le priva de tener acceso a la parte superior de su edificio con graves e irreparables perjuicios para su propiedad.

Contestó el demandado negando las alegaciones esenciales de la demanda y después de celebrarse un juicio en los méritos, la corte a quo dictó sentencia desestimando la demanda.

14

Alega ahora el apelante que el juez sentenciador atribuyó a la prueba presentada un efecto legal erróneo, dictando una sentencia contraria a la prueba.

■■ La corte a quo concluyó que para la fecha del contrato de compraventa celebrado entre el demandante y el demandado, existía una planta alta construída de madera sobre el edificio adquirido por el apelante, así como la escalera, también de madera, que partiendo del otro solar del demandado daba acceso a dicha planta alta; que posteriormente el demandante destruyó tanto la planta alta como la escalera de madera; que si bien la referida escalera podía considerarse como un signo aparente de una servidumbre de paso, la cláusula sexta del contrato de compraventa equivalía al pacto en contrario a que se refiere el artículo 477 del Código Civil [ed. 1930] y que por lo tanto la finca del demandante no había adquirido una servidumbre de paso sobre la del demandado.

Aceptando que la susodicha escalera fuera un signo aparente de una servidumbre de paso, el mismo no podría ser considerado como título adquisitivo de tal servidumbre. Veamos. Las servidumbres de paso, por ser discontinuas y aparentes, sólo pueden adquirirse en virtud de título. Artículo 475 Código Civil; *Pabón* v. *Ayala*, 71 D.P.R. 938. Sin embargo el artículo 477 del mismo código dispone lo siguiente:

"Artículo 477.—La existencia de un signo aparente de servidumbre entre dos fincas establecido por el propietario de ambas, se considerará, si se enajenare una, como título para que la servidumbre continúe activa y pasivamente, a no ser que, al tiempo de separarse la propiedad de las dos fincas, se exprese lo contrario en el título de enajenación de cualquiera de ellas, o se haga desaparecer aquel signo antes del otorgamiento de la escritura."

No hay controversia en este caso en cuanto a que el signo aparente no se hizo desaparecer antes del otorgamiento del título de enajenación de una de las fincas. Por otro lado, dicho título no contiene un pacto expreso en el sentido de que la servidumbre cesaría. Las partes, sin embargo, convinieron en la cláusula sexta de la escritura de venta, lo siguiente:

"Sexta: Convienen las partes Don Obdulio Correa y su esposa doña Carmen Sánchez con el señor Antonio Martín Rosado en que se constituya una servidumbre para construir una pared medianera en el fondo del solar vendídole al señor Antonio Martín Rosado que colinda por el fondo del solar descrito anteriormente bajo la letra "B" y por la presente el señor Antonio Martín Rosado concede permiso al señor Obdulio Correa para utilizar la pared construída en el fondo de ambos solares, teniendo ambas partes derecho al uso y disfrute como pared medianera de dicha pared construída en el fondo de los dos solares, pudiéndose utilizar para cualquier edificación, construcción o como base para usarse cuando se construya un edificio en el solar del señor Obdulio Correa o cuando se reconstruya el edificio propiedad del señor Antonio Martín Rosado, sujeto a las condiciones que regula el Código Civil de Puerto Rico en cuanto a la servidumbre de medianería, pactándose por las partes que disfrutarán ambas partes de los beneficios de esta servidumbre en igualdad de condiciones."

Conforme a la anterior cláusula tanto el demandado como el demandante pueden usar la pared medianera para cualquier edificación, construcción o como base para la construcción de un edificio, sujeto a las disposiciones del Código Civil sobre servidumbres de medianería. Si lo estima conveniente, el demandado puede alzar la pared medianera por tener derecho a ello. Artículo 513 del Código Civil; *Monclova* v. *Blanco*, 40 D.P.R. 305. Como dicha pared medianera divide ambos fundos por sus respectivos fondos, la continuación de la servidumbre de paso haría físicamente imposible el disfrute de la servidumbre de medianería expresamente convenida por las partes. A la inversa, el disfrute de la servidumbre de medianería excluiría la posibilidad física del uso de la servidumbre de paso. *Cf.* Sentencia Tribunal Supremo de España de 24 de mayo de 1933. En consecuencia, la cláusula sexta tiene toda la virtualidad y opera como un pacto contrario a la continuación de la servidumbre de paso. Siendo ello así, no puede sostenerse que la finca del demandado queda gravada

con la servidumbre de paso a favor de la del demandante a base de la presunción establecida en el citado artículo 477 del Código Civil.

Respecto a las servidumbres cuyos títulos nacen de la presunción establecida en el citado artículo 477, consideradas por los tratadistas como constituídas por destino del padre de familia, dice Francisco Bonet Ramón, Catedrático de Derecho Civil en la Universidad de Barcelona en 1942, lo siguiente:

"A nuestro juicio, se trata de un modo tácito de constitución de la servidumbre, que deriva de la voluntad presunta del originario propietario único de los dos fundos. En efecto, si hubiese establecido sobre uno de sus fundos un gravamen o servicio para el otro, y después enajenado por actos entre vivos o *mortis causa* los dos fundos a favor de adquirentes diversos, sin decir nada acerca de dicho gravamen, en el momento de tal transmisión de propiedad, es cuando la carga que primero no tenía naturaleza de servidumbre, porque *nemini res sua servia,* adquiere tal naturaleza y se constituye la servidumbre.

"Como observa Josserand . . . , realmente el destino del padre de familia no constituye un modo de adquisición original y distinto de las servidumbres, sino un caso particular de adquisición por título; el propietario común habría podido estipular, cuando se separaron los [d] os fundos, que el estado de hecho por él establecido sería mantenido, y esta estipulación habría sido natural, tan natural, que el legislador la sobreentiende, la presume, y el destino del padre de familia no es otra cosa que la forma concreta, apropiada, que revista la presunción legal. En suma, esta institución es, pues, de *naturaleza probatoria;* desempeña una función análoga, guardadas todas las proporciones, a la reconocida a la prescripción adquisitiva; prueba la voluntad de establecer una servidumbre y, por consiguiente, la existencia de esta servidumbre, como la prescripción prueba la existencia de un derecho de propiedad.

"Para que pueda constituirse la servidumbre por destino del padre de familia, son necesarios los siguientes requisitos: 1º. Un *estado de hecho,* del que resulte, por obras o signos visibles, que sobre uno de los fundos gravaba a favor del otro fundo del mismo propietario una carga, que si los fundos hubiesen sido de propietarios distintos hubiese constituído objeto de servidumbre.

2º. El *carácter permanente* de tal carga, en el sentido de que se trate de un servicio que un fundo deba prestar a otro como tal, y no constituya un beneficio personal o transitorio que el único propietario quiera sacar de su cosa. 3º. La existencia de dos fundos distintos pertenecientes al mismo propietario que pasan al dominio de dos propietarios distintos, o bien de dos partes distintas del mismo fundo, de la que una estaba sujeta a una carga a favor de la otra, y que después vienen transferidas por el único propietario, a dos propietarios distintos. 4º. Que en el momento de la transmisión de la propiedad nada haya dispuesto el propietario originario acerca de la carga en cuestión, dejándola, pues, tácitamente en vida." (Tomo 26, Revista de Derecho Privado, páginas 411, 412.)

En el caso de autos no podemos resolver que la servidumbre de paso quedara tácitamente con vida por oponerse a ello una interpretación estricta del contrato de compraventa en lo que respecta a constitución de gravámenes. Tal como se sostiene en la Sentencia del Tribunal Supremo de España de 3 de marzo de 1942, es indudable que los principios generales del derecho y la jurisprudencia establecida por aquel Tribunal aconsejan favorecer en lo posible el interés y condición del predio sirviente, por ser de interpretación estricta toda la materia relativa a imposición de gravámenes, aunque es cierto que este clásico principio de interpretación favorable al derecho de propiedad sólo puede prevalecer, como hubo de apuntar la sentencia de 21 de noviembre de 1881, en los casos dudosos.

■ Por otra parte, es dudosa la procedencia del remedio especial y rápido del injunction para proteger un alegado derecho de servidumbre, carente de título claro y cierto y cuya existencia no había sido antes determinada. *Franco* v. *Oppenheimer*, 40 D.P.R. 153.

*Por las razones expuestas, se confirmará la sentencia apelada.*