# 97 DTA 181

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL VI, CAGUAS, HUMACAO Y GUAYAMA**

EMILIO CORDERO CRUZ, LUISA REYES GARCIA Y LA SOCIEDAD
DE BIENES GANANCIALES COMPUESTA POR AMBOS
Apelantes

v.

ELENA BURGOS MORALES
Apelada

Núm. KLAN-96-00727

San Juan, Puerto Rico, a 21 de agosto de 1997

Panel integrado por su Presidente, Juez González Román
y los Jueces González Rivera y Ortiz Carrión

Ortiz Carrión, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El señor Emilio Cordero Cruz, su esposa, Luisa Reyes García y la sociedad legal de gananciales constituida por ambos apelaron un dictamen emitido por el Tribunal de Primera Instancia, Sala Superior de Humacao, en el cual se declaró sin lugar la demanda incoada por éstos contra la señora Elena Burgos Morales y se le impuso la suma de $800.00 en concepto de honorarios de abogado. ■

En su escrito los peticionarios hacen los siguientes señalamientos:

*"1. Erró el Hon. Tribunal en la apreciación de la prueba y/o al excluirla erroneamente [sic] al concluir que no se probaron daños.*

*2. Erró el Hon. Tribunal en la aplicación del derecho a los hechos expuestos al concluir que (a) hubo incuria, (b) no hubo mal uso de la pared medianera y/o de derecho de medianería, (c) que en el hueco abierto en la pared se constituyó una servidumbre de luces.*

*3. Erró el Hon. Tribunal al imponer honorarios por temeridad."*

Antes de considerar estos señalamientos, procede dilucidar la naturaleza del recurso incoado, exponer el trasfondo procesal del caso y hacer una relación de la prueba presentada en el juicio.

### I

En el año 1994 el señor Cordero Cruz, su esposa y la sociedad legal de gananciales constituida por ambos presentaron una demanda contra la señora Burgos Morales. En la demanda alegaron que el 26 de agosto de 1993, se dictó una resolución sobre estado provisional de derecho a instancias de la señora Burgos Morales en la cual se les ordenó cortar un árbol de mangó que tenían en su propiedad y secar sus raíces. Alegaron que en la resolución sobre estado provisional de derecho se determinó que el árbol estaba *"junto a la estructura de la señora Elena Burgos Morales, a mucho menos de 2 metros de distancia".* Además alegaron que la estructura en cuestión era *"una construcción ilegal";* que en repetidas ocasiones objetaron *"las actuaciones ilegales relativas a la referida construcción"* y la caída de agua de dos tubos de la demandada que descargaban en su propiedad; que la escritura de compraventa de *"todas las personas adquirentes de los referidos inmuebles de la Corporación de Renovación Urbana y Vivienda"* establece que no se pueden ampliar ni alterar las estructuras adquiridas, sin autorización previa de la Junta de Planificación; que tales actuaciones le ocasionaron *"serios daños a la tranquilidad y disfrute de la propiedad...asimismo una invasión a la intimidad de su hogar",* por la *"ubicación ilegal"* de una ventana en la propiedad de la demandada; y que *"[l]a destrucción innecesaria del árbol [les] ha ocasionado angustias mentales e incomodidad por la alta temperatura que se ven forzados a tolerar en su hogar, y gastos innecesarios para pagar la destrucción del árbol, además de la frustración que conlleva renunciar a la vegetación que se ha sembrado y visto crecer y al disfrute estético de la vista".* Basándose en estas alegaciones, los esposos Cordero Reyes reclamaron la suma de $75,000.00 y solicitaron que se ordenara la destrucción inmediata de la alegada construcción ilegal en la propiedad de la demandada. Además solicitaron se fijara una suma en concepto de honorarios y se concedieran costas.

En su contestación a la demanda la señora Burgos Morales, admitió que no tenía permiso para la construcción de la estructura. Sin embargo, entre varias defensas afirmativas, cuestionó la existencia de una servidumbre en equidad y planteó la falta de diligencia de los demandantes en cuanto al cumplimiento con la supuesta restricción. Alegó además que los demandantes mantenían construcciones y/o ampliaciones en su propiedad en violación a la condición restrictiva que invocaban; que la resolución judicial que ordenó el corte del árbol no podía ser base para sostener una reclamación al amparo del Artículo 1802 del Código Civil de Puerto Rico. Junto a su contestación a la demanda, la señora Burgos Morales presentó una reconvención en la que alegó que la reclamación de los esposos Cordero Reyes era innecesaria y caprichosa y que le había ocasionado daños ascendentes a $25,000.00; que el árbol propiedad de los demandantes le había ocasionado a su residencia daños estructurales y permanentes, que consistían en grietas, filtraciones y daños que ascendían a $25,000.00. Solicitó entonces que se declarara sin lugar la demanda, se declarara con lugar la

reconvención, y, en consecuencia, se ordenase la compensación de los daños y perjuicios sufridos por ella.

Posteriormente, mediante un documento titulado *"Réplica"* los esposos Cordero Reyes contestaron la reconvención; aceptaron que, construyeron un área para herramientas; alegaron que la señora Burgos Morales había hecho alteraciones *"a la estructura de vivienda en la que utilizó una pared medianera"*; y alegaron haber sufrido daños por la privación del árbol, por el uso ilegal de la pared medianera y la pérdida de intimidad por la ubicación de una ventana.

El 23 de marzo de 1995, las partes presentaron su informe de conferencia preliminar entre abogados. En el informe los esposos Cordero Reyes solicitaron permiso para enmendar la demanda e incluir como parte indispensable al ingeniero Iván Acosta Vélez, *"por haber certificado en un plano medidas que no corresponden a la realidad existente"*. Por su parte, la señora Burgos Morales indicó que había obtenido un permiso de construcción para la estructura cuya edificación cuestionaban los demandantes.

De la minuta de la conferencia con antelación al juicio surge que el informe fue aceptado por el tribunal recurrido y se advirtió que la parte demandante habría de someter una enmienda al mismo. El tribunal recurrido señaló el juicio para el 31 de agosto de 1995. Así las cosas, el 28 de marzo de 1995 la parte demandante solicitó que se enmendara el informe para incluir como testigo al ingeniero Iván Acosta Vélez. Posteriormente, la señora Burgos Morales se opuso por entender que lo que se pretendía era enmendar las alegaciones de la demanda, y atacar colateralmente la autorización expedida por la Administración de Reglamentos y Permisos.

Luego, la celebración del juicio se pospuso y la representación legal de los esposos Cordero Reyes solicitó se autorizara su renuncia. Finalmente, la vista en su fondo se celebró el 28 de diciembre de 1995, y al iniciar la misma la nueva representación legal de los esposos Cordero Reyes retiró las alegaciones de la demanda relativas al árbol de mangó y aquellas relativas a la Administración de Reglamentos y Permisos. De tal forma, el pleito se limitó a lo relacionado con la medianería de una pared y al uso de la misma. ■

El 24 de enero de 1996, el Tribunal de Primera Instancia, Sala Superior de Humacao, emitió el dictamen cuya revisión se solicita en el cual consignó las siguientes Determinaciones de Hechos: .

*"1. La parte demandante reside en la propiedad localizada en la calle 1, Bloque A, solar 6, Urbanización Extensión Villas del Pilar, Ceiba, Puerto Rico adquiriendo la misma en fecha del 17 de junio de 1975 de la Corporación de Renovación Urbana y Vivienda.*

*2. La parte demandada reside en la propiedad localizada en la Calle 1, Bloque A, solar 5 de la misma urbanización, adquiriendo la misma en fecha de 17 de enero de 1986 de la Corporación de Renovación Urbana y Vivienda.*

*3. Las partes son vecinos colindantes al patio lateral donde sus propiedades están divididas por una pared medianera que corre a todo lo largo de ambas estructuras residenciales. La pared medianera fue construída [sic] por el desarrollador original, o sea la CRUV, y que estas [sic] son residencias tipo Duplex. La pared medianera esta [sic] ubicada, si se mira de frente a ambas propiedades, hacia el patio lateral derecho del demandante y el patio lateral izquierdo del demandado.*

*4. En su diseño original y como parte del desarrollo de urbanización de Extensión Villas del Pilar la pared medianera se proyectaba hacia el frente de ambos patios laterales, dividiendo parcialmente los mismos y dejando un espacio libre entre las dos estructuras. Este segmento de la pared medianera dividía los patios entre las viviendas tipo duplex. El referido segmento de la pared medianera en su diseño original mide aproximadamente 13 pies de largo y 5 o 6 pies de alto.*

*5. La parte demandada efectuó obras de construcción en su propiedad entre los años 1986 al 1990, cuando fue que aproximadamente se culminaron las mismas.*

*6. Entre las obras realizadas y que son las que le compete a este Tribunal por ser objeto de la presente controversia, se encuentra la elevación de la pared medianera en la parte que divide parcialmente los patios de las residencias de las partes de epígrafe y la construcción de un balcón hacia el patio delantero de la propiedad.*

*7. Con relación a la pared medianera ésta se elevó a todo su largo en aproximadamente 2 1/2 a 3 pies hasta elevarla a la altura original del techo de la residencia y del resto de la pared medianera que divide ambas estructuras residenciales. Es en esta elevación, construída [sic] por la parte demandada, que se puso a descansar la loza de techo que se utilizó para cerrar y ampliar la estructura residencial adicionando un cuarto utilizado como "Family Room". Este cuarto tiene unas medidas de trece pies tres pulgadas (13' 3") de largo por nueve pies y dos pulgadas (9' 2") de ancho. Es importante aclarar que para la ampliación realizada en lo que compete a la pared medianera fue la elevación que se hizo a la misma y consistente en una de 13 pies y 3 pulgadas de largo por 2 1/2 a 3 pies de alto. En la pared medianera, ni en su elevación se abrieron huecos y [sic] ventanas. A nivel de la elevación y la altura de la cornisa del techo se ubicó dentro de la propiedad del demandado un tubo de desague.*

*8. El balcón consiste de una estructura con medidas de seis pies y una pulgada de ancho (6' 1") por veinte pies con seis pulgadas 20' 6" de largo, corriendo por el frente de la propiedad del demandado. Para la construcción de dicho balcón no se utilizó la pared medianera en controversia, ya que ni la pared que colinda con el patio lateral del demandante, ni la loza de techo se afianzó sobre dicha pared. En la pared construída [sic], la cual da hacia el patio lateral del demandante se abrió un hueco cubierto parcialmente con 9 balaustres. Este hueco mide aproximadamente dos pies de alto por cinco pies con seis pulgadas (5' 6") de largo y se encuentra a una altura proximada [sic] de 5 pies y 6 pulgadas medidas desde el piso del balcón hasta la parte inferior donde comienza el hueco. Conforme a lo declarado por el demandante habría que subirse en una silla para poder ver por ese hueco hacia su propiedad. A su vez, en dicha construcción (el balcón) se ubicó un tubo de desague hacia el patio delantero de la propiedad del demandado, que está retirado aproximadamente a un pie y una pulgada (1' 1") de la colindancia del demandante.*

*9. En la actualidad las construcciones objeto de la presente demanda y construídas [sic] por la parte demandada cuentan con el correspondiente permiso de construcción, caso núm. 94-53-152-HPC otorgado por la Administración de Reglamentos y Permisos, Oficina Sub-Regional de Humacao en fecha de 21 de septiembre de 1994.*

*10. La parte demandante ha realizado construcciones en su propiedad consistentes en un balcón y una estructura accesoria las cuales no cuentan con el correspondiente permiso de construcción.*

*11. En y durante todo el tiempo en que se llevó a cabo la construcción objeto del presente caso y esta [sic] fue finalizada (1986-1990), la parte demandante nunca hizo requerimiento a la parte demandada para que se paralizara la obra en cuestión o le hizo reclamación alguna por la elevación de la pared medianera y/o daños ocasionados a la misma, aunque estuvo consciente de los trabajos que se efectuaban, incluyendo la elevación de la pared medianera."*

Basándose en estas determinaciones de hechos, el tribunal recurrido declaró sin lugar la demanda presentada por los esposos Cordero Reyes y le impuso el pago de $800.00 en concepto de honorarios de abogado.

Inconformes, los esposos Cordero Reyes solicitaron la reconsideración del referido dictamen. El tribunal recurrido declaró sin lugar dicha solicitud y oportunamente los esposos Cordero Reyes acudieron a este Tribunal.

Con el beneficio de la Exposición Estipulada de la Prueba, y los alegatos de las partes procedemos a considerar los señalamientos de error.

## II

### A. Daños

Los esposos Cordero Reyes plantean que el tribunal recurrido erró al concluir que ellos no lograron demostrar los daños causados por la elevación de la pared medianera. Sostienen que ellos declararon haber sufrido *"daños temporales mientras se alzaba la pared medianera y posterior a ello consistentes en que se afectó adversamente la flora del jardín de la parte demandante y se incurrió en gastos de conservación al pintar la pared incluyendo la elevación sin ser reembolsados por ello"*. Además, los esposos Cordero Reyes sostienen que el tribunal recurrido erró al *"otorgar credibilidad al perito de la parte demandada en cuanto a la ventilación y dirección del viento"*. Aducen que el perito de la demandada admitió que no preparó ningún informe ni presentó *"certificaciones que acrediten su expertise en esta área exepto [sic] su declaración de que se interesó en el tema y leyó algunas fuentes"*. Añaden que la declaración del perito es *"sospechosa"* y que ellos *"declararon, no fundados en teorías sino en la propia percepción, que la ventilación se afectó adversamente con el levantamiento de la pared"*.

Del dictamen recurrido surge que el tribunal *a quo* descartó el testimonio de los esposos Cordero Reyes sobre los daños alegadamente sufridos a consecuencia del cemento que cayó sobre sus plantas, por no formar parte de las alegaciones ni surgir nada en ese sentido del informe de conferencia entre abogados que se había aprobado con antelación al juicio. El tribunal recurrido además consignó *"que no se trajo evidencia que sustentara dicho hecho"*. ■ En efecto, así surge de la Exposición Estipulada de la Prueba presentada ante este Tribunal.

De la Exposición Estipulada de la Prueba surge que el señor Cordero Cruz *"narró que él mismo tuvo que pintar a sus expensas la cara de la pared medianera que da hacia su solar, incluyendo la ampliación hecha por la demandada y que ésta no le reembolsó los gastos, los cuales no pudo estimar, ni le hizo ofrecimiento ulterior alguno"*. Surge además, que la señora Reyes García *"[e]ntra a exponer los daños ocasionados a las plantas de su jardín por el cemento que caía de la construcción de la demandada. Identifica en unas fotos las plantas a las que hacía referencia localizándolas muy próximas a la pared que se estaba ampliando. No pudo estimar los daños"*.

En cuanto al testimonio del señor Cordero Cruz sobre el alegado efecto adverso de la construcción en la ventilación de su hogar, el mismo no le mereció credibilidad al tribunal recurrido. El tribunal recurrido confirió credibilidad al testimonio del perito presentado por la parte demandada.

Aunque es norma reiterada que un tribunal no está obligado a seguir indefectiblemente la opinión, juicio, conclusión o determinación de un perito y que está en plena libertad de adoptar su criterio propio en la apreciación o evaluación de dicha prueba y hasta descartarla aunque resulte ser técnicamente correcta, los argumentos de los recurrentes no nos persuaden a intervenir con la apreciación del tribunal recurrido y descartar el testimonio del perito presentado por la aquí recurrida. *Santiago Otero v. Méndez*, **94 J.T.S. 38**; *Ramos Robles v. García*, **93 J.T.S. 167**; *Zambrana v. Hospital Santo Asilo de Damas*, 109 D.P.R. 517 (1980); *Prieto v. Maryland Casualty Co.*, 98 D.P.R. 594, 623 (1970).

De la Exposición Estipulada de la Prueba surge que el perito de la demandada, el ingeniero Cruz Marcano, declaró que era graduado y licenciado del Colegio de Agricultura y Artes Mecánicas del Recinto de Mayaguez. Además, declaró *"de su experiencia de trabajo de sobre 30 años con la Junta de Planificación de Puerto Rico y la Administración de Reglamentos y Permisos, donde se había jubilado, allá para 1993 ostentando el cargo de Administrador Auxiliar de Operaciones Regionales de la A.R.P.E. y Sub-Administrador de dicha agencia"*. En cuanto a la ventilación de la casa de los esposos Cordero Reyes declaró que:

*"...aunque no era perito en meteorología y no había realizado estudio alguno sobre la dirección de los vientos; sí tenía pleno conocimiento de la metodología utilizada por la Junta de Planificación en la preparación y confección de los mapas de zonificación. Que estos [sic] se preparaban utilizando el norte como punto cardinal. Por lo que conforme a la hoja del mapa de zonificación, en la cual se ubicaban las propiedades de ambas se ilustraba que los frentes de las misma [sic] estaban orientada [sic] hacia el este. Por lo que la ventilación de ambas propiedades entraba por el frente de las mismas, ya que los vientos alisios soplan del este o noreste hacia oeste o suroeste cubriendo la Isla. Que la dirección de los vientos alisios era de conocimiento general. Que ante esa situación era poco probable que la elevación de la pared medianera al igual que la construcción de la pared del balcón*

*ubicadas hacia [el] patio lateral derecho del demandante afectaran de forma alguna la ventilación de la propiedad de éste, ya que la ventilación de dicha propiedad era por el frente de la misma y no por sus costados y/o patios laterales."*

Por otro lado, tampoco hay nada en el dictamen del foro recurrido, ni en los planteamientos de los recurrentes que indique que el tribunal *a quo* actuó con pasión, prejuicio o con parcialidad al descartar el testimonio del señor Cordero Cruz, o que exista error manifiesto. Es norma reiterada que en ausencia de esas circunstancias no se intervendrá con la apreciación de la prueba que haga el foro de instancia. *Mercado Rivera v. Universidad Católica de Puerto Rico,* **97 J.T.S. 106,** pág. 1274; *Méndez de Rodríguez v. Morales Molina,* **96 J.T.S. 149,** pág. 347; *Monllor Arzola v. Sociedad Legal de Gananciales,* **95 J.T.S. 77;** *Rodríguez Oyola v. Machado,* **94 J.T.S. 82;** Regla 43.2 de las de Procedimiento Civil.

## B. Incuria Medianería

Los esposos Cordero Reyes señalan que se opusieron e impidieron que los obreros de la demandada removieran una verja de alambre eslabonado agregada a la pared medianera y que la demandada había admitido que no supervisaba a sus empleados ni les pedía cuenta de lo que acontecía. Alegan que el tribunal recurrido ignoró ese testimonio, del cual surge que no se quedaron cruzados de brazos ni abandonaron su derecho, por lo que aducen que ese foro erró al concluir que hubo incuria. Los esposos Cordero Reyes aducen que tal conclusión surge de las siguientes expresiones del tribunal recurrido:

*"Durante cuatro años el demandante observó y estuvo consciente de los trabajos efectuandose [sic] incluyendo la elevación de la pared medianera, sin que en ningún momento expresara objeción alguna, lo cual constituyó un consentimiento tácito a las obras efectuándose".* (Enfasis Suplido.)

Estas expresiones no tienen la implicación que le atribuyen los recurrentes. Ahora bien los recurrentes también señalan que el tribunal recurrido erró al concluir que hubo consentimiento tácito y confundió el alcance y naturaleza de los artículos 513 y 515 del Código Civil de Puerto Rico, 31 L.P.R.A. secs. 1757 y 1759. ■ Señalan que el Artículo 515 *"exige que la utilización de la pared medianera por uno de los vecinos no perjudique el derecho del otro vecino en el ejercicio de su derecho concurrente de apoyar también una obra suya en dicha pared".* ■

Sin embargo, si hubo o no consentimiento tácito no resulta pertinente a las cuestiones planteadas ante el tribunal recurrido y ante este Tribunal, toda vez que el Artículo 513 del Código Civil de Puerto Rico reconoce el derecho de todo propietario a alzar la pared medianera, siempre que lo haga a sus expensas y que indemnice cualquier perjuicio que ocasione, aunque sea temporal. Por consiguiente, la recurrida no necesitaba el consentimiento de los esposos Cordero Reyes para alzar la pared medianera.

Por otro lado, según las Determinaciones de Hechos fue en la *"elevación, construída [sic] por la demandada, que se puso a descansar la loza del techo que se utilizó para cerrar y ampliar la estructura residencial adicionando un cuarto utilizado como "Family Room'."* Para utilizar la elevación de la pared medianera, la recurrida tampoco necesitaba el consentimiento de los esposos Cordero Reyes. Una situación similar a la del caso de autos fue atendida por el Tribunal Supremo de Puerto Rico en *Monclova v. Banco,* 40 D.P.R. 305 (1929). El Tribunal Supremo de Puerto Rico resolvió que lo dispuesto en el Artículo 586 del Código Civil entonces vigente, equivalente al Artículo 515 aquí en controversia, no tiene aplicación cuando no se trata de apoyo en la medianería sino alzamiento de pared nueva sobre el muro medianero, lo que permite el Artículo 513 antes transcrito a todo propietario haciéndolo a sus expensas. ■ De las Determinaciones de Hechos no surge que la pared medianera fuese utilizada *"para apoyar, dar soporte o permitir la colocación de la losa del techo"* de la demandada, como sostienen los recurrentes. ■

## C. Servidumbre de luces

Por último, los esposos Cordero Reyes señalan que el tribunal recurrido erró al concluir que se constituyó una servidumbre de luces ■ y plantean que el hueco abierto por la recurrida en la pared contigua es ilegal, por no tener las dimensiones ni especificaciones requeridas por el Artículo 517 del

Código Civil de Puerto Rico, 31 L.P.R.A. sec. 1772. En la alternativa aducen que es ilegal por tener vistas rectas u oblicuas en contravención al Artículo 518 del Código Civil de Puerto Rico, sec. 1773.

■

La servidumbre de luces es el derecho de abrir huecos de ciertas condiciones para tomar luz del predio ajeno y la de vistas es el derecho de abrir huecos o ventanas para gozar de vistas a través de fundo ajeno, y poder impedir toda obra que las merme o dificulte. Castán, citado en Veléz Torres, *Curso de Derecho Civil,* San Juan, 1983, t. II, págs. 391-392. La doctrina moderna sostiene que el Código Civil no establece ninguna servidumbre legal de luces y vistas, sino que impone limitaciones al derecho de propiedad. *Ibid.* Véase además, Roca Juan, *Comentarios al Código Civil y Compilaciones Forales,* Ed. Albaladejo, 2da. ed., Madrid, Editorial Revista de Derecho Privado, 1990, t. II, vol. 2, págs. 222 *et seq.*; Manresa, *Comentarios al Código Civil Español,* 7ma. ed., Madrid, Reus, 1972, t. IV, págs. 967 *et seq.* En este sentido, en *Díaz v. Pérez,* 56 D.P.R. 727, 731-733 (1940), el Tribunal Supremo de Puerto Rico señala, citando con aprobación a los distinguidos tratadistas Scaevola y Manresa, que la mera apertura de huecos para luces y vistas en una pared contigua a propiedad ajena no establece servidumbre alguna a favor de quien los abre. Para que se constituya una servidumbre de luces o de vistas, debe haberse adquirido el derecho, ya sea por título, prescripción o signo aparente. Vélez Torres, *op. cit.,* págs. 392 y 393.

A la luz de lo expuesto, contrario a la conclusión del tribunal recurrido, en el caso de autos no se constituyó propiamente una servidumbre de luces por la mera apertura del hueco en la pared contigua a la finca de los esposos Cordero Reyes. Los huecos permitidos en una pared contigua a finca ajena se reputan de mera tolerancia. *Ibid.,* pág. 293; *García v. García,* 25 D.P.R. 128, 141 (1917).

Por otro lado, el dueño de una pared contigua a finca ajena tan sólo tiene derecho a abrir huecos con el fin de recibir luces si tiene las especificaciones establecidas por el Artículo 517 del Código Civil de Puerto Rico. Véase *Delgado v. Rodríguez,* 71 D.P.R. 445, 450 (1971); *Díaz v. Pérez, supra;* *García v. García, supra,* págs. 135-136. El Artículo 517 del Código Civil de Puerto Rico dispone lo siguiente:

*"El dueño de una pared no medianera, contigua a finca ajena, puede abrir en ella ventana o huecos para recibir luces a la altura de las carreras, o inmediatos a los techos, y de las dimensiones de 30 centímetros en cuadro, y en todo caso, con reja de hierro remetida en la pared y con red de alambre.*

*Sin embargo, el dueño de la finca o propiedad contigua a la pared en que estuvieren abiertos los huecos podrá cerrarlos si adquiere la medianería, y no se hubiere pactado lo contrario.*

*También podrá cubrirlos edificando en su terreno o levantando pared contigua a la que tenga dicho hueco o ventana. "* (Enfasis Suplido.)

Implícitamente el Artículo 517 reconoce al dueño del predio contiguo el derecho a exigir ante los tribunales de justicia que se cumpla con lo allí previsto. *García v. García, supra,* pág. 139.

En cuanto al hueco construido por la aquí recurrida, el tribunal *a quo* consignó lo siguiente en sus Determinaciones de Hechos:

*"El balcón consiste de una estructura con medidas de seis pies y una pulgada de ancho (6' 1") por veinte pies con seis pulgadas 20' 6" de largo, corriendo por el frente de la propiedad del demandado. Para la construcción de dicho balcón no se utilizó la pared medianera en controversia, ya que ni la pared que colinda con el patio lateral del demandante, ni la loza de techo se afianzó sobre dicha pared. En la pared construída [sic], la cual da hacia el patio lateral del demandante se abrió un hueco cubierto parcialmente con 9 balaustres. Este hueco mide aproximadamente dos pies de alto por cinco pies con seis pulgadas (5' 6") de largo y se encuentra a una altura proximada [sic] de 5 pies y 6 pulgadas medidas desde el piso del balcón hasta la parte inferior donde comienza el hueco. Conforme a lo declarado por el demandante habría que subirse en una silla para poder ver por ese hueco hacia su propiedad. A su vez, en dicha construcción (el balcón) se ubicó un tubo de desague hacia el patio delantero de la propiedad del demandado, que está retirado aproximadamente a un pie y una pulgada*

*(1' 1") de la colindancia del demandante."*

De esta determinación de hecho, surge que el hueco construido por la recurrida no es de las dimensiones requeridas ni cumple con las especificaciones del Artículo 517. Ante tal situación, los esposos Cordero Reyes tienen derecho a que se ordene el cierre del hueco en controversia; sin perjuicio de que la recurrida pueda continuar recibiendo luces siempre que se sujete a las limitaciones establecidas en el Artículo 517 del Código Civil de Puerto Rico. *Reyes v. Alvarez,* 39 D.P.R. 566 (1929).

### D. Honorarios de abogado

Finalmente, los recurrentes señalan que el tribunal recurrido erró al imponerle honorarios por temeridad. Aducen que no existe temeridad por defender sus derechos. ■

La Regla 44.1(d) de las de Procedimiento Civil, según enmendada, establece que en caso de que cualquier parte haya procedido con temeridad, el tribunal deberá imponerle en su sentencia el pago de una suma por concepto de honorarios de abogado que el tribunal entienda corresponde a tal conducta. La conducta temeraria que amerita la imposición de honorarios de abogado es aquella que promueve un pleito que pudo evitarse; aquella que lo prolongue innecesariamente, o que produzca la necesidad de que la parte adversaria incurra en gestiones que se pudieron evitar. *Santos Bermúdez v. Texaco P.R., Inc.,* 123 D.P.R. 351, 355 (1989); *Ramírez v. Club Cala de Palmas,* 123 D.P.R. 339, 349-350 (1989). Mediante el mecanismo provisto en la Regla 44.1 los tribunales protegen a los litigantes de litigios, dilaciones y gastos innecesarios. *Miranda v. E.L.A.,* **94 J.T.S. 152,** pág. 528.

El Tribunal Supremo ha sostenido reiteradamente que la determinación sobre temeridad descansa en la sana discreción del tribunal *a quo,* y que la partida de honorarios concedida no debe variarse en revisión, a menos que la misma sea excesiva, exigua o constituya un abuso de discreción. *Quiñones López v. Manzano,* **96 J.T.S. 95,** pág. 1316; *Bonilla Medina v. P.N.P.,* **96 J.T.S. 33,** pág. 791; *Miranda v. E.L.A.,* **94 J.T.S. 152,** pág. 528; *Ramírez v. Club Cala de Palmas, supra,* págs. 349-350.

En el caso de autos, los recurrentes no han demostrado que concurra alguna de estas circunstancias, por lo que no habremos de variar la partida impuesta en tal concepto por el tribunal recurrido. El trámite procesal antes expuesto apoya la determinación de ese foro.

Este Tribunal no impondrá honorarios de abogado, como solicita la recurrida.

### III

Por los fundamentos antes expuestos, se expide el auto de *certiorari* y se modifica el dictamen recurrido, para ordenar a la señora Burgos Morales tapiar o cerrar el hueco abierto en la pared contigua a la finca de los esposos Cordero Reyes en un término de treinta (30) días a partir de la notificación de esta Resolución sin perjuicio que opte por continuar recibiendo luces siempre que se sujete a las limitaciones establecidas en el artículo 517 del Código Civil de Puerto Rico.

Así modificado se devuelve el caso para que el tribunal recurrido proceda a emitir sentencia de conformidad con lo aquí dispuesto en la que además se disponga de la reconvención interpuesta por la señora Burgos Morales. ■

Lo acuerda y manda el Tribunal y lo certifica la Señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 97 DTA 181

1. Ante tal situación procesal el recurso presentado por los esposos Cordero Reyes se atiende como uno de *certiorari*. El dictamen recurrido no dispuso de la reconvención, por lo que no dispuso de la totalidad de las reclamaciones en el caso del título, y no puede conferírsele carácter final, por no haberse cumplido con lo dispuesto en la Regla 43.5 de las de Procedimiento Civil. Según se detalla más adelante, junto a su contestación

la señora Burgos Morales presentó una reconvención.

**2.** Véase Anejo 16, págs. 123-124 del escrito presentado por la parte apelada.

**3.** A esos efectos, el tribunal recurrido expresó lo siguiente:

*"...Durante la vista celebrada la parte demandante no produjo ninguna prueba, ya fuese testifical, documental y/o [sic] pericial para demostrar los daños sufridos por la elevación de la pared medianera. Esta se limitó a alegar que durante la construcción le cayó cemento a sus matas y que se les afectaba su ventilación. En primer lugar la primera legación [sic] es improcedente ya que los supuestos perjuicios temporales nunca fueron parte de las alegaciones y el informe de conferencia entre abogados, además que no se trajo evidencia que sustentara dicho hecho. Por otro lado en relación a la falta de ventilación este Tribunal le da entera credibilidad al testimonio pericial del Ing. Cruz Marcano, quien estableció que era muy improbable que dicha construcción afectara la ventilación de la propiedad del demandante debido a la ubicación de dichas propiedades ya que sus frentes dan hacia el este y esa es la dirección que por lo general corren los vientos. A su vez, no se puede pasar por alto que la elevación de la pared medianera fueron escasamente tres pies a lo sumo...Por lo que es forzoso concluir no solo [sic] que los demandantes no pudieron probar los daños, inexistentes."* (Enfasis Suplido.)

**4.** En lo pertinente, el Artículo 513 del Código Civil de Puerto Rico dispone que:

Todo propietario puede alzar la pared medianera, haciéndolo a sus expensas e indemnizando los perjuicios que se ocasionen con la obra, aunque sean temporales.

Por su parte, el Artículo 515 del Código Civil de Puerto Rico establece lo siguiente:

*"Cada propietario de una pared medianera podrá usar de ella en proporción al derecho que tenga en la mancomunidad; podrá, por lo tanto, edificar apoyando su obra en la pared medianera, introduciendo vigas hasta la mitad de su espesor, pero sin impedir el uso común y respectivo de los demás medianeros.*

*Para usar el medianero de este derecho, ha de obtener previamente el consentimiento de los demás interesados en la medianería, y si no lo obtuviere, se fijarán por peritos las condiciones necesarias para que la nueva obra no perjudique a los derechos de aquéllos."*

*Según se explica más adelante, el Artículo 515 antes citado no es de aplicación al caso de autos, por referirse al uso de pared medianera. De las Determinaciones de Hechos no surge que la recurrida apoyara las obras realizadas a su propiedad en la pared medianera, sino que lo hizo en su elevación, sobre la cual los esposos Cordero Reyes no tienen los derechos de medianería. Quienes confunden el alcance y naturaleza de los artículos antes citados son los recurrentes."*

**5.** Añaden que la demandada admitió que no observó que se hiciera una excavación para dar mayor profundidad a la pared ni que se aumentara su espesor y que no se fijó por peritos las condiciones necesarias para que la nueva obra no le perjudicara.

**6.** El Artículo 514 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 1758, le confiere la facultad a los recurrentes de adquirir en la elevación los derechos de medianería pagando proporcionalmente el importe de la obra y la mitad del valor del terreno sobre el que se le hubiese dado mayor espesor.

**7.** Según las Determinaciones de Hechos, para la construcción del balcón de la demandada tampoco se utilizó la pared medianera.

**8.** Los recurrentes plantean además, en la alternativa, que la pared en que se construyó el hueco objeto de controversia es medianera, aunque se construyó en la propiedad de la recurrida. Es en la solicitud de reconsideración presentada ante el tribunal recurrido donde por primera vez se expone este planteamiento. El

mismo no formó parte de las alegaciones ni de las controversias señaladas en el Informe de Conferencia Preliminar entre Abogados. Aparte de resultar tardío, ni las Determinaciones de Hechos ni la Exposición Estipulada de la Prueba apoyan tal planteamiento.

**9.** El Artículo 518 del Código Civil de Puerto Rico, *supra*, dispone lo siguiente:

*"No se pueden abrir ventanas con vistas rectas, ni balcones u otros voladizos semejantes, sobre la finca del vecino si no hay un metro y medio de distancia entre la pared en que se construyan y dicha propiedad.*

*Tampoco pueden tenerse vistas de costado u oblicuas sobre la misma propiedad, si no hay sesenta (60) centimetros de distancia."*

**10.** Por su parte, la recurrida aduce que la actuación de los recurrentes de incluir y luego retirar alegaciones y luego volver a incluirlas de manera indiscriminada constituye temeridad. Además, la recurrida aduce que la temeridad estriba en la ausencia total de daños o en la falta de prueba de ellos. Asimismo sostiene que la temeridad consistió en la obstinación, contumacia e insistencia de una actitud frívola de continuar con un litigio innecesario y que la misma se desprende del hecho de no haberse aceptado su oferta de transacción.

**11.** Adviértase que en la Exposición Estipulada de la Prueba presentada ante este Tribunal se hace constar que la señora Burgos Morales *"[n]o aportó prueba sobre los daños alegados en su reconvención".*