JESÚS STELLA RODRÍGUEZ, demandante contra-demandado y apelante, *v.* JORGE BLASINI FLACH, sustituído por su viuda, EDITH STERN, ETC., ET ALS., demandados, contra-demandantes y apelados.

Núm. 8462.—*Sometido:* Junio 12, 1942. *Resuelto:* Febrero 5, 1943.

*Leopoldo Tormes,* abogado del apelante; *Raúl Matos,* abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

La que se ejercita en este caso, aun cuando ha sido instituída bajo las disposiciones de la Ley sobre Sentencias Declaratorias, es simple y llanamente una acción negatoria de servidumbre. He aquí los hechos esenciales:

El demandante Stella y el demandado Blasini eran condueños de la finca "Santa Elena", radicada en Guayanilla. En julio 30 de 1937 dichos condueños dieron por terminada la comunidad de bienes, y dividieron dicha finca en tres porciones, adjudicándose al demandante una denominada "Stella Número Dos" y al demandado las otras dos, denominadas "Blasini Número Uno" y "Blasini Númetro Tres".

De acuerdo con la escritura de adjudicación, a la porción "Stella Número Dos" se le impusieron, como predio sirviente, para beneficio de las porciones adjudicadas a Blasini, como predios dominantes, tres servidumbres: (1) para la permanencia de una tubería, que arranca desde una bomba en el predio dominante y se extiende por el sirviente; (2) para la permanencia de una zanja de riego que conduce agua desde la porción "Blasini Número Tres", a lo largo de la carretera, cerca del borde de la porción "Stella Número Dos", hasta la porción "Blasini Número Uno", como predio dominante; y (3) para la permanencia de un tanque de mampostería instalado en "Stella Número Dos", para beneficio de la porción "Blasini Número Uno".

Alega el demandante, que el demandado pretende utilizar como camino de tránsito de varias fincas que posee al Norte y al Este de la porción "Stella Número Dos", un camino que se encuentra abierto en terrenos de dicha porción; y que en la escritura por la cual se adjudicó dicha porción al demandante no aparece descrita ni constituída servidumbre de paso alguna a favor de las fincas del demandado. Pide el demandante que se dicte sentencia declarando que no existe servidumbre de paso sobre la porción adjudicada al demandante y a favor de las adjudicadas al demandado.

Alega el demandado que la porción "Stella Número Dos" está atravesada por un camino denominado "Callejón de la Bomba", que se extiende desde la carretera que conduce de Yauco a Guayanilla hasta llegar a las fincas del demandado; que dicho callejón desde un principio ha constituído la vía general para el servicio de la hacienda "Santa Elena"; y que después de la división de la finca el camino se siguió y se sigue utilizando por los sucesores del que lo estableció, y que nada en contrario se expresó en la escritura de división, dejándose el callejón siempre abierto como un gravamen o signo aparente de servidumbre. Como defensas especiales alegó el demandado: (1) que él adquirió el derecho de paso

por dicho camino "por haberlo usado desde tiempo inmemorial, tanto él como los anteriores dueños, sin interrupción alguna, con antelación a la vigencia del Código Civil Español hecho extensivo a Puerto Rico por Real Decreto de 31 de junio de 1889, de conformidad con las Siete Partidas, y, en tal virtud, su adquisición por prescripción ha consolidado su derecho en dominio"; y (2) que el camino fué consagrado (*dedicated*) al uso público por los anteriores dueños, lo cual reconoce la existencia de una servidumbre de paso permanente para el demandado y sus fincas. Pide el demandado que se declare que sobre el camino en cuestión existe una servidumbre de paso a favor de sus fincas, como predios dominantes.

Tanto en su demanda como en su contestación a la contrademanda, el demandante Stella insistió en que el demandado Blasini y sus herederos están impedidos de alegar derecho alguno de servidumbre de paso por el camino de "La Bomba", por haber reconocido Blasini, en la escritura de división de la comunidad, que el citado camino estaba abierto en terrenos de la porción "Stella Número Dos", sin que en la escritura se mencionara la existencia de una servidumbre de paso sobre dicho callejón.

Visto el caso ante la Corte de Distrito de Ponce, dictó ésta sentencia declarando sin lugar la demanda y con lugar la contrademanda. No estando conforme, el demandante Stella interpuso el presente recurso. Alega en apoyo del mismo que la corte sentenciadora erró al denegar la moción del demandante para que se eliminasen las defensas especiales de adquisición del camino por prescripción y por haber sido consagrado al uso público; al interpretar la escritura de división de comunidad, insertando en la misma una servidumbre de paso sobre la cual nada se dijo en dicha escritura; al aplicar a los hechos del caso el artículo 477 del Código Civil, edición 1930; al dejar de aplicar los artículos 500 a 504, ambos inclusives, del mismo Código; al admitir

en evidencia las declaraciones de los cuatro testigos presentados por los demandados y basar en ellas su fallo, no obstante estar impedidos los demandados de invocar título por prescripción o por haber sido consagrado el camino al uso público; y al dictar una sentencia contraria a la ley y los hechos.

Examinaremos primero la evidencia para determinar si ella es suficiente para justificar la sentencia recurrida.

Para sostener sus alegadas defensas especiales los demandados presentaron en evidencia varios planos, en los que aparece el camino en cuestión, y los testimonios a que haremos referencia a continuación.

Marcelino Cruz Pacheco, de 81 años de edad y residente en Guayanilla desde 1859, declaró: que conoce la finca "Santa Elena" y el camino de "La Bomba" desde 1868; que ese camino era la vía principal dentro de dicha finca; que desde 1868 todo el mundo pasaba por dicho camino y los empleados de Stella y Blasini siempre han transitado por ahí; que por ese camino se sacan las cañas de la finca; que existen los escombros de un cementerio en el trayecto que ocupa ese camino, el cual cementerio se estuvo utilizando durante unos diez años.

Abdón Rodríguez, de 73 años y vecino de Guayanilla, después de identificar el camino de "La Bomba", declaró que hace más de 60 años que conoce ese camino; que durante ese tiempo todo el vecindario ha transitado por allí; y que existe un cementerio del cual no se han sacado los restos.

Adolfo Ortiz, de 65 años de edad, residente en Guayanilla, declaró, que conoce la finca y el camino desde que tuvo uso de razón; que los vecinos y peones pasaban por allí y también los carros para ir a casa de Julio Pietri.

Francisco Rodríguez, vecino de Guayanilla, de 48 años de edad, declaró que conoce el camino desde hace 40 años; y que el mismo ha estado abierto al público desde que él lo conoce y que se ha estado utilizando hasta ahora por el pú-

blico. Varios otros testigos de la parte demandada establecieron el hecho de que el camino de "La Bomba" siempre ha estado y está actualmente abierto al público.

La prueba del demandante tendió a demostrar que el camino en cuestión era de su exclusiva propiedad por virtud de la escritura de división de comunidad.

La corte sentenciadora no erró al negarse a eliminar las defensas especiales de adquisición de la servidumbre de paso por prescripción y por consagración (*dedication*) del camino al uso del público, ni tampoco al admitir prueba testifical para establecer dichas defensas. Al incoarse contra él una demanda tendiente a negar la existencia a su favor de una servidumbre de paso por el camino de "La Bomba", el demandado tenía derecho a alegar en su defensa la existencia de la servidumbre y la adquisición de ésta por uno o más de los modos reconocidos por la ley para adquirir esta clase de derechos. Si el demandado, como parte del público, había adquirido el derecho a transitar por dicho camino, el hecho de que en la escritura de división de la comunidad de bienes existente entre él y el demandado no se mencionara la existencia de dicho derecho, no puede ni debe constituir un impedimento para privarle de su derecho a alegar un título adquirido por prescripción e independientemente de la escritura de división de comunidad. La cuestión ante la corte sentenciadora no envolvía en manera alguna la interpretación de la escritura de división de la comunidad de bienes, toda vez que en ella nada se dice ni en favor ni en contra de la existencia de la alegada servidumbre de paso.

El artículo 477 del Código Civil (ed. 1930) lee como sigue:

"La existencia de un signo aparente de servidumbre entre dos fincas establecido por el propietario de ambas, se considerará, si se enajenare una, como título para que la servidumbre continúe activa y pasivamente, a no ser que, al tiempo de separarse la propiedad de las dos fincas, se exprese lo contrario en el título de enajenación de cualquiera de ellas, o se haga desaparecer aquel signo antes del otorgamiento de la escritura."

La disposición legal que acabamos de transcribir es de perfecta aplicación a los hechos del presente caso. La evidencia demuestra fuera de toda duda que el camino de "La Bomba" existe desde antes del año 1868, y que desde un principio ha constituído la vía general para el servicio de las seis fincas que en comunidad y proindiviso pertenecieron al demandante y al demandado hasta el 30 de julio de 1937, fecha en que se otorgó la escritura de división de la comunidad. Cuando se otorgó la escritura de división y se adjudicaron al demandado Blasini las porciones "Blasini Número Uno" y "Blasini Número Tres", el camino estaba aun allí abierto como signo aparente de servidumbre, siendo usado para el servicio de las fincas pertenecientes a la comunidad y por el público. Si el deseo del demandante Stella era que ese camino le perteneciese exclusivamente y que la adjudicación de las dos porciones a Blasini no fuera considerada "como título para que la servidumbre continúe activa y pasivamente", él debió hacerlo constar así en la escritura de división de la comunidad. Ya hemos visto que la escritura nada dice sobre este extremo. Pudo el demandante hacer desaparecer el signo evidente de servidumbre, antes del otorgamiento de la escritura, y no lo hizo. La prueba demuestra que el camino continuó tal y como estaba antes, abierto y siendo usado por el demandado y por el público. La corte inferior no erró al no aplicar los artículos 500 a 504 del Código Civil. Basta leerlos para ver que son claramente inaplicables.

Arguye el demandante apelante que el artículo 477 del Código Civil (541 del Código Español) es aplicable solamente a los casos de fincas distintas y separadas que se hubieran reunido en un mismo dominio, no al de la división de una, ya que en el artículo háblase de dos fincas. Los comentaristas del artículo 541 del Código Español, así como el Tribunal Supremo de España, se han expresado en sentido adverso a la contención del apelante. Dice Scaevola (Vol. 10, pág. 284):

" ...Laurent, Germano y Pacifici-Mazzoni opinan en el sentido de ser aplicable a ambos casos, de cuyo criterio también participamos.

"En realidad, cuando el dominio de varias fincas se ha consolidado, no hay para qué hablar jurídicamente de fincas distintas, porque todas constituyen una unidad jurídica. No hay que olvidar nunca que el único momento al cual hay que atender es el del fraccionamiento material del dominio, el de la extinción de la unidad, sea por enajenarse una parte de la propiedad que antes de la confusión constituía ya una finca, sea por enajenarse una porción cualquiera de ella. Aun en el caso de confusión del dominio de varias fincas, es muy probable que el dueño, durante la consolidación del dominio, altere la extensión o el estado de las fincas agregadas, y no ser, por tanto, las mismas originarias, sino mayor o menor, al tiempo de la enajenación. La servidumbre arranca de la enajenación de una porción material de la propiedad, constitutiva de una unidad jurídica, bien por ser una sola finca, bien por la agrupación de varias: esto es indiferente. En uno y en otro caso hay igual razón y debe haber idéntico derecho. Lo que exige el espíritu del artículo y exige su letra es la presencia de dos fundos separados y de diverso dueño, y esto se cumple también en el fraccionamiento de un mismo predio, puesto que la fracción disgregada desde el momento de la división, forma un fundo distinto. Repetimos una vez más que el momento de la separación del dominio por la división material de la propiedad, es el capital, el decisivo, y que la ley no requiere ni puede requerir que mientras subsista la confusión del dominio constituyan los predios heredades distintas. Es más: esto es un imposible legal, porque precisamente por estar reunido en una persona el dominio de varias fincas existe una unidad jurídica."

Manresa, en el volumen 4, págs. 616 y 617 (Tercera Edición), se expresa así:

"Entre dos fincas.—Ya dijimos que el signo podía hallarse, según la especie de servidumbre, en el predio sirviente o en el dominante. Hay ciertamente casos en los que puede decirse que se halla en ambos, en el sentido de que, establecido sobre uno de los predios, llega hasta el otro, como ocurrirá con un camino, un puente, un acueducto, etc.; mas, propia y materialmente, no está nunca *entre* las dos fincas. El art. 541 no emplea, pues, la palabra *entre* en el sentido material que algunos suponen, y sólo indica que hay un signo que revela el servicio, la servidumbre, el lazo existente entre dos fincas. No es que el signo sitúe entre las dos fincas, sino que aparentemente revela servidumbre entre dos fincas. Por eso no puede exigirse como un

requisito esencial la existencia de un signo entre dos fincas, sino la existencia de un signo que indica servidumbre entre dos fincas.

Pero, ¿son precisas dos fincas? La idea de unidad de finca es relativa. El Código no pretende que haya de tratarse de dos fincas tan fijas, que no puedan considerarse bajo otro aspecto como una, o convertirse en tres o más, ni puede pretenderlo. Precisamente en la mayoría de los casos, con relación a las fincas rústicas, se tratará de parcelas colindantes que, al pertenecer a un solo dueño y hallarse unidas, constituirán una sola finca. Pero el Código se ocupa de las servidumbres reales, y ya ha afirmado en el artículo 530 que las servidumbres exigen siempre dos predios, uno que sufra el gravamen y otro al que aproveche el beneficio, y la apariencia de servidumbre ha de revelar idéntico aspecto. En este sentido habla de dos fincas, porque el signo revela un servicio que se presta de una parte a otra parte, y sean las que fueren las unidades reales de fincas que existan, han de estimarse como dos o graduarse de dos en dos al efecto de la servidumbre.''

Véanse: Enciclopedia Jurídica Española, Tomo 28, pág. 640(d); Sentencias del Tribunal Supremo de España de 14 de septiembre de 1867 (16 Jurisprudencia Civil 107, 109); de 7 de noviembre de 1883 (53 Juris. Civil 203, 208); y de 21 de octubre de 1892 (72 Juris. Civil 249, 253) en las cuales se sostiene que el artículo en cuestión es aplicable cuando se trata de una sola finca dividida entre diferentes personas. La jurisprudencia de esta Corte Suprema se ha expresado hasta ahora en el mismo sentido que la de España, en *Martínez* v. *American Railroad Co.*, 19 D.P.R. 974; *Portela* v. *Societé Anonyme des Sucreries de Saint Jean*, 29 D.P.R. 927; *Muñoz* v. *Viejo*, 35 D.P.R. 864; *Illanas* v. *González*, 51 D.P.R. 803 y *McCormick* v. *Vallés*, 55 D.P.R. 226.

¿Es la prueba testifical ofrecida por el demandado legalmente suficiente para sostener la defensa especial de adquisición de la servidumbre de paso por el uso o posesión inmemorial de la misma desde antes de junio 31 de 1889, fecha en que comenzó a regir en Puerto Rico el Código Civil?

La Ley 15, título 31 de la Partida 3ª., es la ley aplicable a los hechos de este caso (*Nido y Cía.* v. *Albir Alicea*, 27 D.P.R. 34), por ser la que regía con anterioridad a la vigen-

cia del Código Civil. El Tribunal Supremo de España, en su sentencia de 9 de noviembre de 1865, 12 Juris. Civil 285, 286 interpretando la citada ley en un caso en el que los hechos eran prácticamente iguales a los del de autos, resolvió:

"Que esta posesión inmemorial no se justifica suficientemente con testigos, el mayor de 55 años, por más que digan que así lo han visto durante el tiempo de que pueden dar razón; puesto que tal testimonio no alcanza a demostrar que el uso de dicha servidumbre escede de la memoria de los hombres más ancianos, y que no hay ninguno que tenga conocimiento de su origen, o sea, según dicha ley exije, *tanto tiempo de que non se puedan acordar los omes quanta ha que lo comenzaron á usar.*"

Los testigos Marcelino Cruz Pacheco y Abdón Rodríguez, a quienes la corte sentenciadora dió entero crédito, son ambos nacidos y residentes durante toda su vida en Guayanilla, en la vecindad de la finca "Santa Elena". El primero es un anciano de 81 años; y el segundo, de 73. Ambos declararon que recordaban que desde que tuvieron uso de razón, siempre vieron el camino de "La Bomba" abierto y usado por el público, sin que supieran cuándo fué construído el camino ni cuándo comenzaron a usarlo los vecinos de aquel barrio.

En *Nido y Cía.* v. *Albir Alicea,* supra, los testigos ofrecidos para demostrar el uso inmemorial fueron dos ancianos, uno de 65 años y otro de 76, quienes declararon que conocían y habían usado el camino desde que eran pequeños y que siempre habían visto ese camino en aquel sitio. Esta Corte Suprema, al confirmar la sentencia por la cual se reconoció la existencia de una servidumbre de paso, por voz de su Juez Asociado Sr. Del Toro, se expresó así:

"Es cierto que puede presentarse una prueba mejor que la que existe en este caso para demostrar el uso inmemorial. Antiguos monumentos, mapas, libros, historias de sucesos que tuvieran lugar en el camino mismo o en relación con dicho camino, etc., podrían aportar una prueba que rebasaría los límites de la memoria de los más ancianos del lugar, pero si la prueba testifical es por sí sola

suficiente, entonces las declaraciones de dos testigos de la edad que dejamos indicada y que declararon en la forma que conocemos, es lo más que puede exigirse.'' (Pág. 37).

Es preciso convenir en que si hombres de una edad tan avanzada como la que tenían los dos testigos mencionados no saben cuándo fué que empezó a usarse el camino, pero sí se acuerdan de haberlo visto durante toda su vida abierto al público, el requisito de la ley ha sido cumplido y el uso desde tiempo inmemorial ha quedado suficientemente justificado. Puede decirse en verdad que el testimonio ofrecido en el presente caso ha alcanzado ''a demostrar que el uso de dicha servidumbre escede de la memoria de los hombres más ancianos''.

Las servidumbres discontinuas, sean o no aparentes, sólo pueden adquirirse en virtud de título. Artículo 475, Código Civil (1930). Esta clase de servidumbre sólo podrá adquirirse por prescripción, por el uso desde tiempo inmemorial, siempre que el mismo haya comenzado y continuado desde antes de la promulgación en esta Isla del Código Civil y por un tiempo tan largo que los hombres más ancianos del lugar no puedan acordarse de cuándo empezó a usarse el camino. La citada ley 15, tít. 31, de la Partida 3ª. no fija término para la adquisición de una servidumbre discontinua por prescripción; solamente se requiere que el uso haya sido por tiempo inmemorial.

Las decisiones de esta Corte Suprema en *Cividanes* v. *Amorós Hermanos*, 8 D.P.R. 589 y en *Nido y Cía*. v. *Albir Alicea*, supra, en tanto en cuanto puedan conllevar la idea de que la servidumbre discontinua de paso puede ser adquirida por el uso del camino por un término mayor de cuarenta años, no deben prevalecer y quedan en cuanto a ese extremo revocadas por la presente. No basta probar que el camino se ha usado por más de cuarenta años. En el caso de *Nido y Cía*. lo que en realidad se sostuvo fué que la evidencia de dos testigos, uno de 67 y otro de 77 años, cuyo

·"testimonio abarca claramente un período mayor de cuarenta años" era suficiente para demostrar el uso por tiempo inmemorial.

*La sentencia recurrida debe ser confirmada.*