LA SOCIEDAD LEGAL DE GANANCIALES compuesta por PABLO SALAS MANGUAL ET AL., demandantes y peticionarios, *v.* MUNICIPIO DE AGUADA ET AL., demandados y recurridos.

*Número:* CC-96-128 *Resuelto:* 17 de noviembre de 1997

118

*Víctor J. Estrella Hernández*, abogado de la parte peticionaria; *Wilson Cabán Ayala*, del *Bufete Cabán & Román*, abogado de la parte recurrida.

EL JUEZ ASOCIADO SEÑOR CORRADA DEL RÍO emitió la opinión del Tribunal.

## I

Los demandantes peticionarios, el Sr. Pablo Salas Mangual y su esposa, la Sra. Blanca Bosques Vargas (en adelante los demandantes), son dueños de una parcela de terreno ubicada en los barrios Guayabo y Río Grande del término municipal de Aguada. El 4 de marzo de 1993 los demandantes adquirieron la finca de los esposos Tomás Carlo y Mirta Pérez mediante una escritura pública. El matrimonio Carlo-Pérez había adquirido la propiedad luego de la segregación de parte de una finca perteneciente a la Sra. María Luisa Jiménez López. El 27 de mayo de 1993, mientras los demandantes trataban de cercar su finca, un representante del Municipio de Aguada (en adelante el Municipio) les informó que el Municipio tenía a su favor una servidumbre de paso a través de la propiedad

aludida, consistente de un camino pavimentado, y que cualquier verja o cerca que fuera instalada sería removida.

En consecuencia, el 15 de junio de 1993 los dueños de la finca presentaron una acción civil de interdicto ante el tribunal de instancia, en la cual solicitaron que se determinara la inexistencia de la servidumbre de paso que había sido reclamada por el Municipio. Solicitaron, además, que se les protegiera su derecho de dominio sobre la finca y se ordenara al Municipio que desistiera de interferir en forma alguna con el libre uso y disfrute de su propiedad. Por último, reclamaron una indemnización por los sufrimientos y las angustias mentales sufridas. Por su parte, el Municipio contestó la demanda para negar las alegaciones en su contra. Como parte de sus defensas afirmativas adujo que el camino en controversia había sido asfaltado por el Municipio; que había sido utilizado por los vecinos como vía pública desde tiempo inmemorial, y que si se cerraba dicha vía los vecinos quedarían incomunicados.[1]

Por otro lado, el 27 de mayo de 1993 el Sr. Carlos Cardona y la Sra. Elba Rodríguez (en adelante los codemandados), vecinos del lugar, habían presentado una querella al amparo de la Ley sobre Controversias y Estados Provisionales de Derecho, Ley Núm. 140 de 23 de julio de 1974 (32 L.P.R.A. sec. 2871 *et seq.*), ante el Tribunal Municipal de Aguada. A través de dicha acción reclamaron también tener derecho a una servidumbre de paso por el referido camino a través de la finca de los demandantes. No obstante, las partes convinieron retirar dicha querella y dilucidar el

---

[1] El 2 de agosto de 1993 el recurso presentado se convirtió en un pleito ordinario y los demandantes enmendaron la demanda a los fines de incluir en ella a todos aquellos demandados desconocidos que pudieran afectarse con el resultado del pleito. No obstante, únicamente el Municipio de Aguada (en adelante el Municipio) contestó la demanda, y les fue anotada la rebeldía al resto de los demandados. Por otro lado, conforme al acta de inspección ocular realizada por el tribunal de instancia, el predio donde residen los vecinos, que utilizan el camino en controversia, no se encuentra enclavado sin salida a la vía pública, éste goza de vías alternas con accesos más directos y rápidos a la carretera estatal.

asunto ante el Tribunal de Primera Instancia, por ser éste el foro apropiado.

Luego de varios trámites procesales, el foro de instancia llevó a cabo una inspección ocular y el 8 de junio de 1995 dictó una sentencia para desestimar la demanda presentada. El tribunal de instancia resolvió, en síntesis, que los demandantes no podían interferir con el uso del camino en disputa, ya que éste constituye una servidumbre de paso continua y aparente, la cual llevaba más de veinte (20) años utilizándose como carretera municipal. Sostuvo, además, que en el caso de autos se trataba de "una carretera pavimentada, cuya existencia no depende de que se usen a intervalos más o menos largos, ni de actos del hombre". Anejo 4, pág. 19. La ilustre Sala sentenciadora declaró sin lugar la demanda y sostuvo que se había constituido una servidumbre de signo aparente. El tribunal fundamentó su fallo en *Díaz v. Con. Tit. Cond. El Monte N. Garden*, 132 D.P.R. 452 (1993), donde "[s]e establece una servidumbre en base a[sic] que las aceras constituyen un signo aparente". Anejo 4, pág. 20. La sentencia concluye escuetamente diciendo: "Por lo anterior, es innecesario entrar a discutir si hubo o no hubo prescripción adquisitiva." Íd.

Inconforme con el dictamen emitido, la parte demandante acudió ante el Tribunal de Circuito de Apelaciones, Circuito Regional de Mayagüez y Aguadilla, el cual confirmó la sentencia recurrida tras concluir que se había constituido una servidumbre de paso por signo aparente. De dicha determinación acude ante nos, vía *certiorari*, la parte demandante para alegar la comisión de los errores siguientes:

Erró el Honorable Tribunal de Circuito de Apelaciones al confirmar la Sentencia del Tribunal de Primera Instancia aplicando la doctrina de signo aparente, lo cual no es congruente con lo resuelto por el Honorable Tribunal Supremo de Puerto

Rico en el caso *Díaz v. [Con. Tit. Cond. El Monte N. Garden]*, supra.

. . . . . . . .

Erró el Honorable Tribunal de Circuito de Apelaciones al hacer conclusiones de hechos no sostenidos por la prueba que tuvieron ante sí dicho Tribunal y el Tribunal de Primera Instancia, y como consecuencia de ello llega a conclusiones de derecho erróneas. Petición de *certiorari*, pág. 6.

Decidimos revisar, y a tales efectos expedimos el recurso presentado. Habiendo comparecido ambas partes, y estando en posición de resolver, procedemos a así hacerlo.

Por entender que los señalamientos de error presentados se encuentran íntimamente relacionados, los discutiremos en conjunto.

## II

En síntesis, la parte peticionaria alega que la prueba vertida ante el foro de instancia no es capaz de sostener la conclusión al efecto de que el camino en controversia se convirtió en una servidumbre de paso por signo aparente. Le asiste la razón a la parte peticionaria. Veamos.

El Art. 465 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 1631, define el derecho real de servidumbre como un gravamen impuesto sobre un inmueble (predio sirviente), en beneficio de otro perteneciente a distinto dueño (predio dominante).

Sin embargo, la apariencia absoluta de los términos usados en dicho artículo no se corresponde con la realidad debido a que, además de existir servidumbres de naturaleza real o predial (*i.e.*, aquellas impuestas sobre un predio sirviente a favor de un predio dominante), también pueden establecerse servidumbres de naturaleza personal que gravan un inmueble en consideración a una persona o una comunidad a la cual no le pertenezca la finca gravada. *Borges v. Registrador*, 91 D.P.R. 112 (1964). A este tipo de servidumbre se les llama "servidumbres personales" y se

encuentran incluidas en el Art. 466 de nuestro Código Civil, 31 L.P.R.A. sec. 1632. Este artículo dispone que "pueden establecerse servidumbres en provecho de una o más personas, o de una comunidad, a quienes no pertenezca la finca gravada".

El Tribunal Supremo de España ha considerado las servidumbres personales como irregulares o anómalas y ha señalado que como el Código Civil español no contiene normas acerca de esas servidumbres, habrán de regirse por el título de su constitución. *Borges v. Registrador*, supra, pág. 122. Sobre este particular, el Tribunal Supremo español ha dicho que:

> La servidumbre personal es la que la doctrina moderna designa además con el nombre de servidumbres irregulares o anómalas y que se establecen, no como las reales en beneficio de un predio, sino en consideración a una persona determinada (*intuiti personae*), y consisten, por consiguiente, en la atribución a una persona de cualquier utilidad parcial y determinada que un predio sea susceptible de proporcionar, y como nuestro Código Civil no contiene normas acerca de estas servidumbres, habrá que regirse por el título de su constitución ....[2]

Finalmente, la distinción más relevante que podemos hacer sobre este tipo de servidumbres es que, contrario a las servidumbres prediales, las personales no requieren de la existencia de un predio dominante para su aprovechamiento, sino que simplemente gravan un predio a favor de una persona o una comunidad.

Por otra parte, el Código Civil clasifica las servidumbres según la naturaleza o las características que ellas presenten. Así, pues, por razón de su origen, las servidumbres se clasifican como voluntarias, por un lado, y

---

[2] Sentencias del Tribunal Supremo español de 3 de mayo 1906, 5 de julio 1918, 4 de abril 1921 y 18 de diciembre 1933, citadas en J. Roca Juan, *De las servidumbres: texto, jurisprudencia, comentarios*, Barcelona, Co. Nereo, 1961, Cap. 1, Sec. 2da, Art. 531, pág. 1.

legales o forzosas por otro. Estas últimas son las impuestas por alguna ley o reglamento.[3] Con arreglo a su ejercicio, las servidumbres pueden ser continuas, cuyo aprovechamiento es incesante sin la intervención de ningún hecho del hombre, y discontinuas, cuyo uso es a intervalos más o menos largos y depende de los actos del hombre.[4] Por su visibilidad o exteriorización las hay aparentes, las cuales están continuamente a la vista por signos exteriores que revelan su uso, y las hay no aparentes por razón de que no presentan indicio exterior de su existencia.[5] Finalmente, por razón de su contenido hay servidumbres positivas, ya que exigen una obligación de hacer o de dejar hacer algo, y hay servidumbres negativas, las cuales prohíben hacer algo que sería lícito si no existiera la servidumbre.[6] Estas características producen diferentes consecuencias con respecto a los modos de adquirir o constituir los distintos tipos de servidumbres.

■ Sobre las servidumbres de paso se ha sostenido que, con arreglo a su exteriorización, éstas pueden ser aparentes o no aparentes. Ello dependiendo de si se anuncian mediante la presentación de un signo exterior que revele su uso y aprovechamiento. Véanse: J. Puig Brutau, *Fundamentos de Derecho Civil*, 3ra ed., Barcelona, Ed. Bosch, 1979, T. III, Vol. 2, pág. 401; F. Puig Peña, *Compendio de Derecho Civil Español*, 3ra ed. rev., Madrid, Ed. Pirámide, 1976, T. II, págs. 458–459; *Ibáñez v. Tribunal Superior*, 102 D.P.R. 615 (1974). Es preciso señalar que no cabe duda de que, de existir la servidumbre de paso en controversia en el caso de autos, ella sería aparente, ya que se trata de un camino pavimentado de aproximadamente doce (12) pies

---

[3] 31 L.P.R.A. sec. 1638.
[4] 31 L.P.R.A. sec. 1634.
[5] Íd.
[6] 31 L.P.R.A. sec. 1635.

de ancho que revela claramente su uso y aprovechamiento.(7)

■ En cuanto a su ejercicio, es harto conocido que las servidumbres de paso son de naturaleza discontinua, ya que se utilizan invariablemente a intervalos más o menos largos de tiempo y dependen de los actos del hombre para su aprovechamiento. Art. 468 del Código Civil, *supra*. Véanse, además: *Soc. Gananciales v. Srio. de Justicia*, 137 D.P.R. 70 (1994); *Martín v. Correa*, 76 D.P.R. 12, 14 (1954); *Pabón v. Ayala*, 71 D.P.R. 938 (1950); *Stella v. Blasini*, 61 D.P.R. 372 (1943). Es precisamente debido a tal discontinuidad que en virtud del Art. 475 del Código Civil, 31 L.P.R.A. sec. 1653,(8) las servidumbres de paso, como norma general, sólo pueden ser adquiridas mediante título. *Martín v. Correa*, supra.

■ Ahora bien, a modo de excepción a los términos del aludido artículo 475, las servidumbres de paso también pueden ser adquiridas mediante la existencia de un "signo aparente" si se cumplen los requisitos establecidos por el Art. 477 del Código Civil, 31 L.P.R.A. sec. 1655. Véanse: *Soc. de Gananciales v. Srio. de Justicia*, supra; *Ibáñez v. Tribunal Superior*, supra, pág. 626. Ello, en vista de que tal modo de adquirir ha sido reiteradamente interpretado en el sentido de que resulta de aplicación a cualquier servidumbre continua o discontinua, siempre que ésta sea de naturaleza aparente. *Díaz v. Con. Tit. Cond. El Monte N. Garden*, supra; *Ibáñez v. Tribunal Superior*, supra, pág. 627.

Específicamente, el referido Art. 477 del Código Civil dispone lo siguiente:

---

(7) Según surge del acta que dictara el foro de instancia durante la inspección ocular realizada, el camino en controversia está embreado; su ancho es de aproximadamente doce (12) pies, y contiene dos (2) postes de concreto en los extremos del punto donde la parte demandante intentaba colocar una cerca.

(8) El Art. 475 del Código Civil dispone lo siguiente:

"Las servidumbres continuas no aparentes y las discontinuas, sean o no aparentes, sólo podrán adquirirse en virtud de título." 31 L.P.R.A. sec. 1653.

La existencia de un signo aparente de servidumbre entre dos fincas establecido por el *propietario de ambas, se considerará, si se enajenare una, como título para que la servidumbre continúe activa y pasivamente, a no ser que, al tiempo de separarse la propiedad de las dos fincas, se exprese lo contrario en el título de enajenación de cualquiera de ellas, o se haga desaparecer aquel signo antes del otorgamiento de la escritura.* (Énfasis suplido.) 31 L.P.R.A. sec. 1655.

■ Corresponde entonces determinar si el camino, objeto de la controversia en el caso que nos ocupa, cumple con los requisitos necesarios para ser adquirido como servidumbre de paso mediante un signo aparente. Ello tomando en consideración que las servidumbres no se presumen, sino que hay que probar su constitución, y que el serio gravamen que constituye una servidumbre de paso sobre el predio sirviente no puede imponerse livianamente. *Ibáñez v. Tribunal Superior*, supra.

Según se desprende del antes transcrito artículo 477 del Código Civil, y como desglosáramos en *Díaz v. Con. Tit. Cond. El Monte N. Garden*, supra, los requisitos necesarios para la constitución de una servidumbre por signo aparente son los siguientes:

A. *Existencia de un signo aparente de servidumbre entre dos fincas*

■ El signo aparente es la exteriorización o expresión manifiesta de un hecho visible que revela una relación de servicio en un determinado aspecto entre dos (2) fincas, y el cual es establecido por el dueño de ambas. *Díaz v. Con. Tit. Cond. El Monte N. Garden*, supra, pág. 460; Q.M. Scaevola, *Código Civil*, 5ta ed., Madrid, Ed. Reus, 1947, T. X, págs. 431–432; E. Tamayo, *El derecho real de servidumbre*, Barcelona, Ed. Bosch, 1956, pág. 96. Este signo ha de ser ostensible, indubitado y permanente; no variable, dudoso ni accidental. *Delgado Cruz v. Girau Bernal*, 115 D.P.R. 61, 66–67 (1984); *Ibáñez v. Tribunal Superior*, supra, pág. 627; *Logia Caballeros del Sur v. Cordero*, 74 D.P.R. 444, 450 (1953); *González v. Fernández*, 49 D.P.R. 29, 31 (1935).

Su apariencia exterior le atribuye una publicidad equivalente a la de la inscripción en el Registro de la Propiedad y, por lo tanto, surte efecto contra el adquirente del inmueble aunque no resulte del Registro de la Propiedad la existencia de la servidumbre. *Ibáñez v. Tribunal Superior*, supra, pág. 626. Es también por tal apariencia exterior, que el propio texto del Art. 477 del Código Civil, *supra*, equipara el signo aparente al título de adquisición de las servidumbres una vez éste queda declarado por un tribunal competente. *Díaz v. Con. Tit. Cond. El Monte N. Garden*, supra, citando a J. Bonet Correa, *La constitución tácita de las servidumbres en el Código Civil español*, 4 An. Der. Civ. 73, 92 (1951); *Ibáñez v. Tribunal Superior*, supra, pág. 627.

▮ En cuanto a las servidumbres de paso, y a la luz de tales requisitos, hemos sostenido que la mera existencia de veredas, trillos o caminos irregulares no pueden constituir un signo aparente, y que *el mero permiso del propietario o su tolerancia de paso no son suficientes para establecer la servidumbre*. Véanse: *Díaz v. Con. Tit. Cond. El Monte N. Garden*, supra; *Ibáñez v. Tribunal Superior*, supra; *Goenaga v. O'Neill de Milán*, 85 D.P.R. 170 (1962); *Martín v. Correa*, supra; *Pabón v. Ayala*, supra; *Figueroa v. Guerra*, supra; *Cabanillas v. Gelpí*, 65 D.P.R. 945 (1946).

▮ Ahora bien, nótese que el artículo 477 del Código Civil, *supra*, dispone literalmente que el signo aparente de servidumbre ha de existir "entre dos fincas [y ser] establecido por el propietario de ambas". No obstante, ello ha sido interpretado reiteradamente en el sentido de que no sólo se refiere a aquellas situaciones en que el propietario original de dos (2) fincas establece un signo aparente de servidumbre entre ellas, sino también en aquellos casos en que el propietario de una sola finca establece un signo aparente que se convierte en servidumbre al traspasarse el dominio de una parte de dicho predio a un tercero, quedando así un predio dominante y un predio sirviente. *Ibáñez v. Tribunal Superior*, supra, págs. 625–626; *Rodríguez v. Suárez*, 71

D.P.R. 728, 732 (1950); *Margarida v. Casalduc*, 65 D.P.R. 416 (1945); *McCormick v. Vallés*, 55 D.P.R. 226 (1939); *Portella v. Societé Anonyme Des Sucreries De Saint Jean*, 29 D.P.R. 927 (1921); *Martínez v. American Railroad Co. of P.R.*, 19 D.P.R. 974 (1913).

Por otra parte, al comentar el Art. 541 del Código Civil español, equivalente al Art. 477 de nuestro Código Civil, *supra*, el profesor Puig Brutau, *op. cit.*, pág. 413, señala lo siguiente:

> ... [H]ay que entender esta exigencia, en el sentido de que el signo aparente tendrá la eficacia que proclama el art. 541, no sólo cuando se separa el dominio de dos fincas, sino igualmente al dividirse una sola, pues existe la misma razón de que se aplique en uno y otro caso. Así lo declaró la sentencia de 10 de abril de 1929.
>
> Esta sentencia de 10 abril [sic.] 1929 (Colección Legislativa, tomo 106, páginas 880 a 890) declaró que "este Tribunal Supremo siempre ha reconocido antes y después de regir el mencionado art. 541 la doctrina de que los signos aparentes de servidumbre constituyen título de ésta, no sólo cuando se separa el dominio de dos fincas sino también al dividirse una sola, interpretando a este efecto con acierto el precepto del repetido artículo toda vez que el principio de derecho que lo encarna es igual en uno que en otro caso".

B. *Que el signo aparente de servidumbre lo haya constituido el dueño de ambas fincas*

■ El Art. 477 del Código Civil, *supra*, requiere expresamente que el signo aparente de servidumbre sea "establecido por el propietario" del predio. Claro está, por las consecuencias que conlleva gravar un predio con una servidumbre, se excluye a los simples poseedores como el usufructuario, el arrendatario o el mero detentador del establecimiento del signo aparente. Puig Brutau, *op. cit.*, pág. 417; Puig Peña, *op. cit.*, pág. 461.

■ Sin embargo, también se puede dar la situación en la que el signo sea constituido por el propietario anterior al que enajena. En tal caso, la conservación del signo aparente revela la ratificación y voluntad de dar vida a la

servidumbre. *Díaz v. Con. Tit. Cond. El Monte N. Garden*, supra; *Rodríguez v. Suárez*, supra; J. Roca Juan, *De las servidumbres: texto, jurisprudencia, comentarios*, Barcelona, Co. Nerco, 1961, Cap. I, Sec. 2da, pág. 6.

 De esta manera, el *establecimiento* del signo aparente equivale a la *conservación* del signo por el propietario actual que enajena, aunque fuera puesto por otro propietario anterior, interpretación que puede apoyarse incluso en el último inciso del Art. 477 del Código Civil, *supra*, cuando una de las circunstancias excluyentes de la constitución de la servidumbre es que el signo se haga desaparecer, y como lo que importa según el artículo es la *existencia del signo aparente al momento de la enajenación, el hecho* de conservarlo equivale a su *establecimiento*.(⁹)

C. *Que una de las fincas sea enajenada*

 La enajenación del predio es la que da finalmente la vida jurídica a la servidumbre por signo aparente, ya que mientras el predio sirviente y el dominante pertenezcan a un mismo dueño no puede existir la servidumbre. Puig Peña, *op. cit.*, pág. 460. "En pura doctrina, mientras la finca pertenece en su totalidad a un solo dueño no puede éste establecer la servidumbre, ya que 'la servidumbre es un gravamen impuesto sobre un inmueble en beneficio de otro perteneciente a distinto dueño'."

Ahora bien, este requisito requiere que determinemos el alcance del término "enajenación". Sobre el particular, Puig Peña, *op. cit.*, pág. 462, sostiene que "la doctrina científica estima que esta expresión debe interpretarse en un sentido amplio; y así, los autores y la misma Jurisprudencia la admiten tanto en la enajenación a título oneroso como en la llevada a cabo a título gratuito; en la separación jurídica provocada por la partición de la herencia (Sentencia de 17 de noviembre de 1911) y aun todavía en el caso,

---

(⁹) M. Albaladejo, *Comentarios al Código Civil y compilaciones forales*, 2da ed., Madrid, Ed. Edersa, 1990, T. VII, Vol. 2, pág. 82.

dicen, de que el 'propietario de los dos predios hubiere per-dido la propiedad de uno, a consecuencia de la prescrip-ción". Es decir, han de comprender todas las modalidades voluntarias y forzosas de la transmisión de dominio. Puig Brutau, *op. cit.*, pág. 417.

Así, pues, también se considerará un acto de enajena-ción la división de una sola propiedad mediante su segre-gación en varias parcelas. A fin de cuentas, lo "importante es que se separe la propiedad de las dos (2) fincas *o que una (1) se divida en dos (2)*; que se dé la desintegración, rup-tura o escisión de una finca del dominio confundido inde-pendientemente de cual sea su modalidad de separación". (Énfasis suplido.) *Díaz v. Con. Tit. Cond. El Monte N. Gar-den*, supra, pág. 462.

D. *Que no se haya hecho desaparecer el signo aparente de servidumbre antes del otorgamiento de la escritura de enajenación, o que no se haya hecho una manifestación con-traria a la subsistencia del mismo en el título de enajena-ción de cualquiera de las fincas*

Para que una servidumbre por signo aparente no surja a la vida jurídica después de la enajenación o división del predio, es indispensable que el propietario lo exprese de manera específica, o que haga desaparecer el signo que revela la relación de servicio. *Díaz v. Con. Tit. Cond. El Monte N. Garden*, supra, pág. 463; *Ibáñez v. Tribunal Su-perior*, supra, pág. 625; *Rodríguez v. Suárez*, supra, pág. 733; *Portela v. Societé Anonyme Des Sucreries De Saint Jean*, supra. Sobre el particular, Scaevola, *op. cit.*, pág. 266, sostiene que:

La declaración ha de ser explícita; no debe dejar dudas acerca de la no existencia de la servidumbre. Es decir, deberá expre-sarse esto específicamente, no bastando la declaración genérica de que se trasmite la finca sin carga alguna o sin ninguna clase de servidumbres, tanto porque esta declaración cabría aplicarla a las servidumbres que pudieran existir entre la totalidad de la finca, entre la unidad jurídica determinada por el dominio con-solidado y otras fincas ajenas a él, como porque el artículo exige

implícitamente una declaración particular respecto del signo existente.

▇▇▇ En síntesis, la inacción del propietario de eliminar o destruir el signo creado por él que evidencia la relación de servicio entre un predio y otro previo a la enajenación de una de las fincas, o la falta de una manifestación clara y específica a los efectos de negar la existencia de la servidumbre por signo aparente en la escritura de enajenación, tendrá la inevitable consecuencia de que nacerá o se constituirá un derecho de servidumbre por signo aparente. *Díaz v. Con. Tit. Cond. El Monte N. Garden*, supra, pág. 461.

## III

La parte demandante argumenta que "para que surja a la vida jurídica una servidumbre de paso por signo aparente, tiene que existir una relación de servicio entre dos fincas propiedad de un mismo dueño y establecido por el dueño de ambas fincas", y que "[q]uienes se sirven del referido camino son otras personas cuyas propiedades nunca han formado parte de la finca de la cual surge la finca de los Apelantes–Peticionarios ...". Petición de *certiorari*, pág. 11.

Conforme a las determinaciones de hecho realizadas por el foro de instancia, surge de la inspección ocular que el camino que atraviesa la finca de los demandantes sale de la carretera Núm. 115; discurre por la propiedad de éstos; pasa por la finca colindante perteneciente a un tercero, y termina en las parcelas Nieves donde residen los codemandados, quienes utilizan el camino. En ningún momento se constata que el camino en controversia comunica el predio segregado propiedad de los demandantes con el remanente de la propiedad que perteneció a la Sra. María Luisa Jiménez López antes de la segregación. Tampoco hay evidencia de que el predio colindante con la finca de los demandantes

y las parcelas Nieves haya pertenecido a la señora Jiménez o a sus herederos. En otras palabras, los pretendidos predios —sirviente y dominante— no pertenecían al mismo dueño.

Por lo tanto, no se cumple con el primer requisito establecido por el Art. 477 del Código Civil, *supra,* en lo relativo a que el signo aparente entre las dos (2) fincas tiene que haber sido establecido por el propietario de ambas para que éste se considere como título de servidumbre. Como en el caso de autos el camino discurre a lo largo de tres (3) propiedades, y del expediente surge que en ningún momento pertenecieron al mismo dueño, es imposible que nazca a la vida jurídica la servidumbre de paso por signo aparente debido a que nunca existió *el hecho visible que revela una relación de servicios en un determinado aspecto entre dos (2) fincas, establecido por el dueño de ambas. Díaz v. Con. Tit. Cond. El Monte N. Garden,* supra, pág. 460.

El Tribunal Supremo español resolvió un caso muy similar al de autos, en el cual se interpretó el alcance del artículo 541 del Código Civil español, equivalente al artículo 477 de nuestro Código, *supra.* En dicho caso, demandante y demandado eran copropietarios de una finca que dividieron en dos (2), quedando para el demandante la parte de la finca original que estaba atravesada por un camino que llevaba a un tercer predio. El signo aparente no se encontraba entre los dos (2) predios originalmente unidos, sino entre uno de ellos y un tercer predio. Posteriormente, el tercer predio fue adquirido por el demandado y, aun teniendo salida por otro lado a un camino público, el demandante pretendía que su predio fuera dominante sobre el paso por este tercero. Sobre esta situación el Tribunal Supremo español razonó de la manera siguiente:

> ... [N]o se admite la constitución de tal servidumbre, [pues] no existe propietario común que hubiese establecido los signos de servidumbre, que no consta la existencia de éstos o que, en

todo caso, no existe entre dos fundos que fueran de un mismo propietario, ni, por tanto, establecidos por éste.[10]

De la misma manera, de la evidencia presentada en el caso de marras no surge que los predios llamados a ser sirviente y dominante pertenecieran en momento alguno al mismo dueño, excluyendo de esta forma la posibilidad de aplicación del artículo 477, *supra*.

Por su parte, el Tribunal de Circuito de Apelaciones sostuvo en su sentencia que "el camino es utilizado por vecinos de la comunidad. Así se constató durante la inspección ocular que precedió a la vista en su fondo. El hecho de que dichos vecinos no sean titulares de terrenos enclavados, sin acceso alterno a otra salida, camino o carretera estatal o municipal, no altera necesariamente la determinación apelada". Anejo 3, pág. 8. Añadió que el uso que dichas personas hacen del camino denota una relación de servidumbre, y que a tenor del Art. 462 del Código Civil, *supra*, es posible establecer servidumbres a favor de una comunidad.

Al así actuar, erró el foro apelativo. Ciertamente, el referido Art. 466 del Código Civil dispone que "pueden establecerse servidumbres en provecho de una o más personas, o de una comunidad, a quienes no pertenezca la finca gravada". 31 L.P.R.A. sec. 1633. Sin embargo, y como dijéramos anteriormente, las servidumbres personales son servidumbres anómalas o irregulares y se distinguen de las servidumbres prediales en que no gravan un predio en favor de otro, sino que gravan un predio favor de una o más personas. Véase *Borges v. Registrador*, supra, págs. 121–122.

La naturaleza personal de este tipo de servidumbre excluye necesariamente la posibilidad de que se constituya como servidumbre de signo aparente debido a que el citado

---

[10] S. de 30 de octubre de 1959, Núm. 3971, XXVI (Vol. II) Repertorio de Jurisprudencia 2355, 2356.

artículo 477 especifica que el signo debe ser establecido *entre dos (2) fincas*, para denotar la naturaleza real del gravamen impuesto sobre una finca en favor de la otra. Resulta evidente, pues, que la constitución de servidumbres por signo aparente se refiere con exclusividad a las prediales descritas en el Art. 465 del Código Civil, *supra*, y no a las personales de su Art. 466, *supra*, que no exigen fundo *dominante*. Véanse: M. Albaladejo, *Comentarios al Código Civil y compilaciones forales*, 2da ed., Madrid, Ed. Edersa, 1990, T. VII, Vol. 2, pág. 35; Roca Juan, *op. cit.*, pág. 8.

## IV

Por último, debemos aclarar que carece de méritos el planteamiento del Municipio a los efectos de que el camino en controversia es una servidumbre "continua", ya que se trata de una carretera pavimentada que la usan constantemente los vecinos del lugar. Mucho menos le asiste la razón al intimar que el Municipio adquirió dicha servidumbre mediante prescripción, en vista de que el referido camino lleva más de veinte (20) años utilizándose como vía pública.

En primer lugar, no puede sostenerse que el uso diario de una carretera la convierta en una servidumbre continua. Precisamente ello la convierte en una servidumbre discontinua, ya que hemos visto que una servidumbre es continua cuando su aprovechamiento es incesante en el sentido de que *no se necesita la intervención de la actividad humana*. Véase Puig Brutau, *op. cit.*, pág. 401. Como sostiene Puig Peña, "son servidumbres discontinuas las de paso ... por que su ejercicio requiere el acto de pasar por el fundo sirviente". Así también nos ilustra José R. Vélez Torres, en su obra *Curso de Derecho Civil*, Madrid, Ed. Offigraf, 1983, T. II, pág. 363, al sostener que un "[e]jemplo de [servidumbres continuas] lo constituye la ser-

vidumbre de luces y vistas, en que el predio dominante recibe constantemente el beneficio del predio sirviente. Sin embargo, en las discontinuas (por ejemplo, las de paso), el beneficio se da solamente cuando el hombre actúa, transitando por el predio sirviente".

 Por otro lado, es un principio trillado que las servidumbres de paso, precisamente por ser discontinuas, no pueden adquirirse mediante prescripción. *Martín v. Correa*, supra; *Pabón v. Ayala*, supra; *Figueroa v. Guerra*, 69 D.P.R. 607 (1949); *Cabanillas v. Gelpí*, supra, pág. 947; *Stella v. Blasini*, supra. A tenor con el Art. 473 del Código Civil, 31 L.P.R.A. sec. 1651, para que se pueda adquirir una servidumbre mediante la prescripción de veinte (20) años, ella deberá ser de naturaleza *continua* y aparente. Únicamente por la vía de excepción se ha reconocido la prescripción como uno de los medios para adquirir las servidumbres·de paso, cuando se pueda establecer que se ha estado utilizando el camino en controversia desde tiempo inmemorial con anterioridad a 31 de julio de 1889, fecha cuando se hizo extensiva por Real Decreto la vigencia del Código Civil español a Puerto Rico.

A tales efectos, en *Figueroa v. Guerra*, supra, págs. 610–611, expresamos:

La servidumbre de paso sólo puede adquirirse mediante título y no por prescripción. [Citas omitidas.] Pero antes de 1889, cuando empezó a regir el Código Civil, tal servidumbre podía adquirirse mediante el uso desde tiempo inmemorial bajo la Partida III, tít. 31, ley 15. Por consiguiente, si el uso empezó antes de 1889, es de aplicación la Partida III, tít. 31, ley 15, y puede adquirirse la servidumbre de paso por prescripción, no obstante el hecho de que cuando comenzó a regir el Código en 1889, la servidumbre en cuestión no se hubiera "consolidado... por prescripción inmemorial." [Cita omitida.]

Sin embargo, no es suficiente con probar simplemente el uso con anterioridad al 1889. Tampoco basta con probar dicho uso durante muchos años. La prueba debe demostrar no solamente el uso antiguo, sino que nadie recuerde cuándo empezó dicho

uso. El uso debe ser desde tiempo inmemorial; es decir, durante tanto tiempo que "non se puedan acordar los homes". Véanse, además: *Cabanillas v. Gelpí*, supra; *Stella v. Blasini*, supra; *Miner v. Irizarry*, 52 D.P.R. 206 (1937).

Por encontrarnos en el umbral del nuevo milenio y ante la imposibilidad que representa producir una memoria centenaria que recuerde el uso inmemorial de una servidumbre de paso con anterioridad a 1889, conforme a lo exigido en "la Partida III, tít. 31, ley 15", *Figueroa v. Guerra*, supra, pág. 610, huelga profundizar en la afirmación de que tales circunstancias no fueron probadas en el caso de autos. Más aún, podemos concluir que el paso inexorable del tiempo ha convertido a la prescripción de servidumbres discontinuas por posesión, desde tiempo inmemorial, en una figura jurídica virtualmente anacrónica y relegada a los anales de la Historia del Derecho.

## V

A la luz de lo antes expresado, concluimos que en el caso de autos son inaplicables las doctrinas de servidumbre por signo aparente y de prescripción adquisitiva de servidumbre al no cumplirse con los requisitos establecidos por el Código Civil para ambos supuestos.

Por todos los fundamentos expuestos, *se revoca la sentencia recurrida, se declara con lugar la demanda instada por los peticionarios y se devuelve el caso al tribunal de instancia para que continúe con los procedimientos en torno a la reclamación por daños y perjuicios presentada por los peticionarios.*

El Juez Asociado Señor Fuster Berlingeri emitió una opinión disidente, a la cual se unió la Juez Asociada Señora Naveira de Rodón. El Juez Asociado Señor Negrón García se inhibió.

— O —

Opinión disidente emitida por el Juez Asociado Señor Fuster Berlingeri, a la cual se une la Juez Asociada Señora Naveira de Rodón.

En el caso de autos, el título que el foro de instancia y el foro apelativo le reconocieron al Municipio de Aguada (en adelante el Municipio) sobre la servidumbre de paso en cuestión descansa en dos fundamentos distintos.

Por un lado se determinó que, conforme a las circunstancias de este caso, había quedado constituida una servidumbre de paso *por signo aparente*. Esta postura surge en particular de la sentencia del Tribunal de Circuito de Apelaciones, en la cual se determinó que en la finca matriz existía un camino, que posteriormente se pavimentó, antes de que la finca en cuestión fuese segregada de dicha finca matriz. Concluyó el foro apelativo que como al momento de la segregación no se hicieron manifestaciones contrarias a la continuada existencia del camino pavimentado, al ocurrir la segregación quedó constituida en la finca en cuestión una servidumbre por signo aparente, conforme a lo dispuesto en el Art. 477 del Código Civil, 31 L.P.R.A. sec. 1655.

Este primer fundamento para la existencia de la controvertida servidumbre sería claramente válido si constara palmariamente en los autos del caso que el predio sirviente y el predio dominante de la servidumbre en cuestión pertenecían originalmente al mismo dueño, cuando se estableció el signo aparente entre ellos. En el caso de autos, no cabe duda alguna de que en la finca matriz existía un camino que luego fue asfaltado. Tampoco puede cuestionarse que dicha finca matriz fue dividida, habiéndose segregado la finca en cuestión, gravada por el camino asfaltado, de dicha finca matriz. Sin embargo, no está claro —de los hechos del caso— que el camino asfaltado aludido comunique el predio segregado con el remanente de la finca matriz, ni

que entre estos dos predios exista la relación de predio sirviente y predio dominante. En otras palabras, de lo que consta en autos, no hay hechos suficientes que permitan decidir si aquí está presente o no un requisito que es esencial para determinar si existe una servidumbre por signo aparente. Este dato esencial es si el predio afectado por el camino asfaltado y algún predio que se beneficie de éste *pertenecieron alguna vez al mismo dueño.* La falta de hechos suficientes sobre el particular nos impide dilucidar si en la situación en cuestión se ha establecido o no una servidumbre por signo aparente. No podemos ni afirmar ni negar la existencia de una servidumbre por signo aparente porque los hechos ante nos son insuficientes para una u otra determinación.

## I

El segundo planteamiento del Municipio en el caso de autos es que éste adquirió la servidumbre en cuestión mediante *prescripción.* Para sopesar este planteamiento es necesario examinar los hechos que surgen del expediente que son pertinentes a esta otra cuestión.

El tribunal de instancia concluyó, como una de sus determinaciones de hecho que, desde hace mucho tiempo, anteriores dueños de la finca matriz habían reconocido y aceptado que existía un *camino* para uso público que atravesaba la finca. En efecto, surge del expediente que desde 1945 el camino estaba identificado en planos oficiales de la Autoridad de Tierras como un camino vecinal. Las partes del caso, además, estipularon que el camino aludido fue *pavimentado* por el Municipio durante el cuatrienio de 1969 a 1972, y que desde entonces dicho Municipio da mantenimiento a lo que ahora es una carretera pública y la repavimenta cuando es necesario. Finalmente, también surge del expediente de autos que cuando los demandantes consideraron comprar la finca en cuestión, para el 4 de

marzo de 1993, inspeccionaron dicha finca y conocieron de la existencia de la carretera asfaltada que aquí nos concierne y, a pesar de constarle su existencia, compraron la finca aludida.

En derecho es claro que para poder adquirir una servidumbre mediante prescripción de veinte (20) años, ésta debe ser de naturaleza continua y aparente. Art. 473 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 1651. En el caso de autos no hay disputa alguna en cuanto a que la servidumbre aludida es aparente.

En cuanto al otro requisito, tradicionalmente las *servidumbres de paso* han sido consideradas como *discontinuas*. Ello ha sido así porque su ejercicio requiere el acto de transitar por el camino en cuestión, lo que se considera un acto humano que no es incesante. Sin embargo, en el caso de autos, una vez el camino fue asfaltado y se convirtió en una *carretera pavimentada*, no puede realmente concluirse que se trata de una servidumbre discontinua. Lo propio es que se considere más bien como una servidumbre *continua*. Nótese que una vez queda asfaltado el camino y se convierte en una carretera pavimentada, la existencia de ésta no depende de que sea usada con mayor o menor frecuencia, ni de actos del hombre. La carretera pavimentada lo es *constantemente*. En este sentido cabe hacer una analogía con la servidumbre de acueductos, que conforme al Art. 497 del Código Civil, 31 L.P.R.A. sec. 1720, se considera continua y aparente, "aun cuando no sea constante el paso del agua".

La posición anterior ha sido recogida por eminentes comentaristas del derecho civil. Así, pues, Lucas Fernández, en *La servidumbre predial de paso en el Derecho Civil español*, Murcia, U. Murcia, 1963, señala que cuando la servidumbre de paso existe mediante una obra permanente, como es una carretera, tal servidumbre de paso se torna continua porque la obra en sí constituye el ejercicio de un derecho y es una invasión permanente del fundo gravado.

Esta misma tesis ha sido apoyada por Vicente Guilarte Gutiérrez en *La constitución voluntaria de servidumbres en el Derecho español*, Madrid, Ed. Montecorvo, 1984. La tesis, además, es cónsona con la precisa y clara distinción entre servidumbres continuas y discontinuas formulada por J. Roca Juan en *De las servidumbres: texto, jurisprudencia y comentarios*, Barcelona, Co. Nereo, 1961, Cap. 1, Sec. 1ra. Este autor encara el enjundioso debate que por mucho tiempo ha existido en la doctrina sobre el problema de cómo se distingue una servidumbre de la otra, y con gran acierto señala que para que la servidumbre pueda considerarse continua, entre los fundos dominante y sirviente debe existir "un *estado de hecho* de tal naturaleza y permanencia que haga *posible* al titular utilizar la servidumbre en cualquier momento". (Énfasis en el original.) Guilarte Gutiérrez, *op. cit.*, pág. 14. Si existe tal *cualidad objetiva*, como evidentemente sería una carretera asfaltada (un estado de hecho permanente), "que haga a la servidumbre apta para un uso incesante, aunque no se realice", ésta debe ser considerada como una servidumbre continua. Guilarte Gutiérrez, *op. cit.*, pág. 15.

Al sopesar la postura anterior frente a la más tradicional tesis de que las servidumbres de paso siempre son discontinuas, es menester recordar que, en términos de las consecuencias prácticas, la distinción entre servidumbres continuas y discontinuas sólo es pertinente precisamente en cuanto al asunto de la *prescripción*. En virtud de los Arts. 473 y 475 del Código Civil, *supra*, las continuas son adquiribles por usucapión de veinte años mientras que las discontinuas únicamente pueden adquirirse en virtud de título. Esta distinción sobre la aptitud para la usucapión entre las servidumbres continuas y discontinuas ha sido severamente criticada por eminentes comentaristas. J. Castán, *Derecho Civil español, común y foral*, 15ta ed., Madrid, Ed. Reus, 1994, T. 2, Vol. II, págs. 170–171; J.L. Lacruz Berdejo, *Usucapión de las servidumbres discontinuas*

*o no aparentes*, Madrid, Ed. Reus, 1955; M. Planiol, G. Ripert y J. Boulanger, *Traité Élémentaire de Droit*, París, Librarie de Droit et Jurisprudencia, 1950, T. I, pág. 1244 *et seq.* Se ha señalado que no siempre es cierto que las servidumbres discontinuas no son susceptibles de la posesión continua que es necesaria para la usucapión. Un ejemplo de ello ciertamente sería el caso de una servidumbre de paso como la de autos, que ha sido convertida en una carretera pavimentada por un ente del Estado que, además, le da mantenimiento según sea necesario para conservarla asfaltada. Ciertamente, la acción gubernamental aquí apareja una posesión continua de tal servidumbre, lo que la hace apta para la usucapión. Asimismo, se ha señalado que tampoco es siempre cierto que las servidumbres discontinuas no son aptas para la usucapión, porque dependen de actos transitorios de tolerancia o buena vecindad de parte del dueño del fundo gravado. El caso de autos, de nuevo, es un ejemplo de ello. La acción del ente del Estado de construir una carretera permanente en lo que antes era un mero camino vecinal y de mantenerla como tal, todo ello con el consentimiento de varios dueños de la finca así gravada, elimina cualquier carácter de precariedad que tuviese la vía en cuestión y le da prescriptibilidad a ésta.

Como bien señala *Guilarte Gutiérrez, op. cit.*, pág. 252, la distinción entre servidumbres continuas y discontinuas, que se proyecta precisamente sobre la cuestión de la usucapión de éstas, está siendo abolida en la mayor parte de las regulaciones civilistas modernas. Por ello, y a la luz de lo señalado antes, tiene poco sentido jurídico resolver, en un caso de hechos tan particulares como el de autos, que los demandantes que adquirieron la finca en cuestión, aunque eran plenamente conscientes de la carretera municipal que pasaba por ella, ahora pueden cercar el acceso a ésta e impedir el consuetudinario uso en favor de la comunidad que se le ha dado desde hace ya más de veinte años. No

tiene cabida en nuestra época una noción tan obsoleta del derecho a la propiedad privada. El resultado al que llegaron tanto el foro de instancia còmo el foro apelativo es correcto. Como la mayoría resuelve de otro modo, disiento.